THE STATE EX REL. SANDERSON, Appellant, vs. MANN, County Judge, Respondent.

*March 24 — April 8, 1890.*

*Constitutional law: Taxation of estates.*

| | |
|---|---|
| 76 | 469 |
| 76 | 498 |
| 76 | 469 |
| 77 | 287 |
| 76 | 469 |
| 95 | 88 |
| 76 | 469 |
| 99 | 377 |
| 76 | 469 |
| d113 | 5216 |
| 113 | 5217 |

1. The charge imposed by ch. 176, Laws of 1889 (providing that in counties having more than 150,000 inhabitants a certain percentage of all estates of decedents exceeding $3.000 in value shall be paid to the county treasurer, for the use of the county, at the time of the return and approval of the inventory), is·not a probate fee, or in lieu of such fee, but is a tax.

2. Such charge is not "a tax upon all civil suits," within the meaning of sec. 18, art. VII, Const. Proceedings for the settlement of estates are not "civil suits."

3. Such charge, being imposed upon the whole estate regardless of its solvency, is not a succession tax.

[4. Whether said act of 1889 violates sec. 1, art. VIII, Const. (providing that "the rule of taxation shall be uniform"), or sec. 9, art. I (declaring that "every person ought to obtain justice freely and without being obliged to purchase it," etc.), not determined.]

5. Since the act imposes a tax for general purposes, applies only to Milwaukee county — that being the only county having the population specified,— and is limited to a certain class of estates therein, it is in violation of secs. 31, 32, art. IV, Const., which prohibit the enactment of any special laws for the assessment or collection of taxes, and provide that all laws for such purposes shall "be uniform in their operation throughout the state."

TAYLOR, J., dissents.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

November 26, 1889, the relator filed his petition in the circuit court for Milwaukee. county, stating, in effect, that May 20, 1889, Edward Sanderson, then a resident of said county, died intestate, leaving him surviving a widow and four children, including the said relator, his heirs at law; that said intestate was the owner, at the time of his death,

of real estate in said county of the value of $122,900, and of real estate situate elsewhere of the value of $2,050, and of personal property of the value of $506,990.08, amounting in the aggregate to $631,949.08; that said deceased then owed certain sums of money to various parties; that such proceedings were had in said county court in probate, that July 2, 1889, said widow and said relator and one William Sanderson were duly appointed administrators of said estate, and thereupon duly qualified as such, and letters of administration therein were thereupon duly issued to them under the seal of said court, and that they have ever since been, and now are, acting as such administrators; that October 2, 1889, said administrators duly made a true inventory of all said real and personal property, and duly offered to return the same to said court, but said court declined to receive the same; and thereafter the said property was duly appraised by the appraisers appointed by said county court for that purpose, and the appraisal thereof was of the value stated, and said inventory was duly verified by said administrators, and said appraisal duly certified by such appraisers, and by said appraisers delivered to said administrators; that said respondent was, at all the times mentioned, and has been and is the county judge of said county, duly qualified and acting as such; that November 25, 1889, said petitioner caused said inventory and appraisals to be presented to said county court to be filed and approved, but said court, by the judge thereof, then and there refused to accept proof of or file the same, unless and until said administrators would first pay to the county treasurer of said county, for the use thereof, the sum of $2,631.95, according to the provisions of ch. 176, Laws of 1889; that no objection was or is made by said county judge to receiving and filing and allowing said inventory, except the failure to pay the said sum last named; that said administrators are by law and their letters of administration

required to return said inventory into said county court, and are ready and willing on their part to do everything necessary to duly settle said estate, but are unable to do so by reason of said refusal of said court to accept, allow, and file said inventory and appraisal; that said sum last named is grossly exorbitant and out of proportion for said estate to pay as compensation for the services of the judge of said court, or the clerks in his office, in the settlement of said estate; that such requirement by the county judge to so pay such sum is based wholly on the provisions of said ch. 176, and that said petitioner is advised and believes that said act is unconstitutional and void, and that there is no law requiring any payment whatever; that said refusal to file and allow said inventory and appraisal will work great injury to the petitioner and the other parties interested in said estate, and that the petitioner has no remedy at law or otherwise, unless the writ of *mandamus* issue as herein prayed for, wherefore said petitioner prays that the alternative writ of *mandamus* may issue out of and under the seal of said circuit court, directing and commanding said *John E. Mann*, county judge as aforesaid, to proceed at once to accept proof and file said inventory and appraisal, and to thereafter proceed to the allowance of any account that may be filed by said administrators, and to the settlement of said estate according to law, and without the payment of said $2,631.95 or any sum whatever, or that he may show cause to the contrary thereof before said circuit court, at a time and place to be named by said court.

November 26, 1889, such alternative writ was duly issued by said circuit court, and on the same day served on the said *John E. Mann*, as county judge, and thereupon filed in said circuit court. Thereupon, and on December 3, 1889, the district attorney of said county moved the circuit court to quash said alternative writ, for the reason that the relator herein, as appeared from the relation, had not complied

with the provisions of ch. 176, Laws of 1889. Upon the hearing of the respective counsel upon said motion it was ordered by the said circuit court that said motion to quash be, and the same was thereby, sustained. From the order so made the relator appeals.

For the relator there was a brief by *Van Dyke & Van Dyke*, and oral argument by *W. D. Van Dyke*.

*John Toohey*, for the respondent.

CASSODAY, J. The Hon. Edward Sanderson, residing in Milwaukee, died intestate May 20, 1889, leaving an estate valued at $631,949.08, consisting mostly of personal property. Ch. 176, Laws of 1889, went into effect a short time prior to his death, and applied to the administration of estates in any county having a population of over 150,000, except that estates of $3,000 or less are exempt from its provisions. Of course, Milwaukee county is the only county in the state to which the act is applicable. By the terms of that act the administrators of the estate in question are required to "pay to the *county treasurer* of such county, *for the use thereof*, a sum equal to one half of one per cent." on $500,000 of the appraised value of such estate, and one tenth of one per cent. of such value on the balance of said estate; that is to say $2,631.95 in all. The act expressly requires that such sum shall be paid at the time of the return and approval of the inventory, and that no account of any executor or administrator shall be allowed without proof of such payment, and that the same shall constitute a part of the expense of administration. The only deduction from the gross valuation of such estate, provided for in the act, is the amount of existing specific liens. The act expressly repeals all acts and parts of acts inconsistent therewith. In obedience to that act the county judge refused to accept, approve or file the inventory and appraisal of said estate unless and until said administrators shall first

pay to the county treasurer, for the use of said county, the said sum of $2,631.95. The relator denies the validity of that act, and has instituted this suit to compel the county judge to proceed with the settlement of said estate without the payment of the sum so exacted as a condition precedent.

1. It is claimed by the learned district attorney that the exaction in question is essentially a probate fee or in lieu of such a fee. The title of the act asserts that it is " in lieu of fees in all counties" of the population named. The repealing clause of the act, in addition to what is stated above, purports to repeal "all that part of sec. 2483, R. S. 1878, which provides for the payment of fees to the county treasurer in settlement of estates or guardianship." The so-called fees provided for in that section ranged from twenty to seventy-five dollars, according to the valuation of the estate, and were payable to the county treasurer, for the use of the county, and applied solely to Milwaukee county. Such charge was first authorized by sec. 4, ch. 121, Laws of 1868, but was expressly repealed by ch. 40, Laws of 1872. It was first applied to Milwaukee county by sec. 4, ch. 98, Laws of 1877, and then so incorporated into sec. 2483, R. S., and then continued by ch. 262, Laws of 1880. Such charges have been treated by the legislature as something different from probate fees. Thus ch. 121, Laws of 1868, first authorizing such charges, expressly prohibited the several county judges " from taking or receiving, either directly or indirectly, any fees whatever for their official services in the administration of the estates of deceased persons," and provided for paying such judges a salary. These provisions were incorporated into secs. 2454, 2455, R. S. Ch. 183, Laws of 1880, expressly prohibited both the county judge of Milwaukee county and his assistant register of probate from receiving any fees of office or other compensation than his salary.

A probate fee is manifestly a reward or compensation to

---

---

a county judge or judge or register of probate, for services rendered or to be rendered. Obviously no such fee was required by law in Milwaukee county at the time of the passage of ch. 176, Laws of 1889, except for certified copies of records and papers, as prescribed by sec. 2483, R. S. The same was true respecting other counties in the state. The payment required by that act, therefore, could not have been " in lieu of fees " of such judges or register, as might be inferred from the title of the act. On the contrary, it was manifestly in lieu of the charge or exaction of from twenty to seventy-five dollars, according to the valuation of the estate, thus required to be paid in Milwaukee county. Th's is made plain by the act itself, which requires such payment to be made "to the county treasurer of such county, *for the use thereof.*" The law nowhere prescribes the object or use to which the money so paid is to be applied. There seems to be nothing to prevent its being expended for any legitimate county purposes or public improvements. Besides, the amount of this exaction is in no way dependent upon the amount or value of such services of the judge or register of probate, but depends entirely upon such valuation or appraisal of the estate. Some small estates may be so complicated as to require very much more services from such judge or register than many large estates. Compensation for services must necessarily be graduated by the amount, quality, and character of the services; but here the amount exacted bears no relation to such services, and may be used for entirely other purposes. ` In fact the amount exacted in the case before us, if regarded as a probate fee for services rendered or to be rendered in the case, is so large as to shock the good sense of everybody.

We must hold that the exaction in question is not a probate fee, nor in lieu of, nor equivalent to, a probate fee. It is nothing less than a charge imposed by the legislature as a condition precedent to allowing the county court to

proceed with the administration of this estate. Such charge is necessarily a burden so imposed upon such administrators or such estate, or both, to raise money for public purposes. This brings it within a well-recognized definition of a tax. Blackw. Tax Titles, § 10; Cooley, Taxation, 1. Even where, under the police power, licenses are exacted as a condition precedent for the doing of a certain kind of business otherwise lawful, for the purpose of raising revenue, it is essentially a tax. Cooley, Taxation, 572, 597; Tied. Lim. P. P. 278–289. "The granting of a license, therefore," said CHASE, C. J., speaking for the court, "must be regarded as nothing more than a mere form of imposing a tax." *License Tax Cases*, 5 Wall. 471. In that case it was held that "the requirement of payment for such licenses is only a mode of imposing taxes on the licensed business, and the prohibition, under penalties, against carrying on the business without license is only a mode of enforcing the payment of such taxes." It is very obvious that the charge imposed by the act in question, is essentially a tax.

2. This brings us to the question whether the validity of that act can be maintained on the theory that such exaction is a tax. The constitution provides that "the legislature shall impose a tax on *all civil suits* commenced or prosecuted in the municipal, inferior, or circuit courts, which shall constitute a fund to be applied toward the payment of the salary of judges." There are several reasons why the tax in question cannot be maintained under this section. The fund thereby raised is not restricted to the payment of the salary of judges. County courts must undoubtedly be regarded as "inferior" courts within the meaning of the section, for another section of the constitution empowered the legislature "to abolish the office of judge of probate in any county, and to confer probate powers upon such *inferior courts* as may be established in said county." Sec. 14,

art. VII. But sec. 18 of that article, above quoted, requires such tax to be imposed "on *all* civil suits commenced or prosecuted" in any and all of the courts in the state named in the section. Such a tax has been imposed by general statutes from the beginning. Sec. 2632, R. S. The act in question applies only to Milwaukee county. But another and a conclusive reason why the tax here imposed cannot be justified under the section of the constitution quoted is that the settlement of estates in courts having probate jurisdiction is essentially proceedings *in rem*, and not "civil suits commenced and prosecuted," within the meaning of the constitution. It is upon this theory that the federal courts have uniformly disclaimed jurisdiction in probate matters; since such jurisdiction is not conferred by the words: "The judicial power shall extend to all cases *in law and equity*, arising," etc. Sec. 2, art. III, Const. U. S. If, then, the legislature had the power to impose the tax in question, it was by virtue of its general taxing power, and not under the special grant of power conferred by the section quoted.

3. The general powers of taxation reserved to and possessed by the state are expressly limited in the modes of their exercise. The constitution expressly declares that "the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." Sec. 1, art. VIII. Under this section the legislature undoubtedly have the power to prescribe the property to be taxed, and the rule by which it must be taxed, subject, however, to the limitation that such rule must be uniform. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37. Counsel seem to think that the rulings in that case justified an arbitrary classification of inclusion and exclusion, even where there are no rational grounds for distinction in the character, use, productiveness, or circumstances of the property or subjects taxed. A thorough acquaintance with that case, however,

will not justify such conclusion.    In that case the lands ex-
empted had been granted by the United States to the state,
and by it held in trust for the purpose of building the pro-
posed line of railroad belonging to the plaintiff, and hence
were not subject to taxation, even in the place limits, except
as fast as they were actually earned by the construction of
the road, nor then until certified by the state authorities.
But none of such lands as were situated in the indemnity
limits, even though so earned and so certified to, became
taxable until actually selected, and such selections actually
approved by the secretary of the interior.    *State ex rel.
Bell v. Harshaw, ante*, p. 230.    It was only lands granted
for such a purpose, and acquired in that way and in further-
ance of the object of such grant and in the execution of
such trust, that it was held, in the case referred to, might
be exempted from taxation for a term of years, and after-
wards such exemption extended.    Since the case of *Wis.
Cent. R. Co. v. Taylor. Co.*, 52 Wis. 37, numerous decisions
have been made by courts of high authority, sanctioning the
reasonable classifications of property for the purposes of
taxation, and holding that the same were not in violation
of the rule of uniformity.    Among such cases are the fol-
lowing:    *Kentucky R. Tax Cases*, 115 U. S. 322; *Gibbons v.
Dist. of Columbia*, 116 U. S. 404; *Davenport Bank v. Da-
venport Board*, 123 U. S. 83; *Banger's Appeal*, 109 Pa. St.
79; *Lehigh V. R. Co. v. Comm.* 18 Atl. Rep. (Pa.), 410; *State
v. Under-Ground Cable Co.* 18 Atl. Rep. (N. J.), 581; *State
v. Richards* 18 Atl. Rep. (N. J.), 582; *State Board v. Cent.
R. Co.* 48 N. J. Law, 146; *People ex rel. Iron S. M. Co. v.
Henderson*, 12 Colo. 369; *St. Louis v. Freivogel*, 95 Mo. 533.

It is claimed that the exaction in question is nothing
more than a succession tax, and as such constitutes a dis-
tinct class, and hence is not in violation of the rule of uni-
formity mentioned.    Such a tax is essentially a tax upon
the transmission of estates by devise, bequest, or descent,

and not, properly speaking, a tax upon the property constituting the estate before the same is thus transmitted. The view we have taken of this case renders it unnecessary to determine whether such a tax may lawfully be imposed under our constitution. Upon the death of any person, his property, not exempt, at once becomes chargeable with the payment of all his debts, whether he dies testate or intestate. *Union Nat. Bank v. Hicks*, 67 Wis. 191. Of course, the rights of heirs, devisees, and legatees, in a certain sense become vested at the death of such testate or intestate. The administration of estates is to preserve the same until the claims of creditors are ascertained and provided for, when the residue may be effectively transmitted to the respective parties entitled. A succession tax would necessarily be imposed upon the respective parties thus succeeding to such residue. *Commonwealth's Appeal*, 127 Pa. St. 438; *Mason v. Sargent*, 104 U. S. 689. But the tax in question is not upon such succession, but upon the whole estate at its appraised valuation, regardless of whether it is solvent or insolvent. In case of an insolvent estate nothing would be left after the payment of debts for transmission, and in most estates there are likely to be sufficient debts to reduce the amount of such transmission far below the amount of such valuation. Besides, the amount of such tax is graduated by the amount of such appraisal, and is to be paid by the executors or administrators before or at the time of filing such appraisal, notwithstanding they may only be interested as such officials, and never succeed to any of such estate. Manifestly the burden imposed is not a succession tax, but a tax upon the whole estate, regardless of whether it is solvent or insolvent.

4. Can it be sustained as a tax upon the estate? A short time prior to Mr. Sanderson's death his property was assessed under the general statutes as of the 1st day of May, 1889. Sec. 1033, S. & B. Ann. Stats. If the exaction in

question is to be maintained, then his estate was subject to double taxation for the year 1889, and each tax was imposed by a different rule. Besides, the act in question exempted from such taxation all such estates as did not exceed $3,000 in value. Were we to assume that the act, as applying to Milwaukee county alone, could otherwise be maintained, yet it would be a serious question whether it could be sustained as a uniform rule of taxation under the clause of the constitution quoted. That question will not here be determined.

5. As indicated, the act in question imposes a tax for general purposes, and applies only to Milwaukee county. As thus limited, can it be sustained? A similar question was presented in *Murphy v. Hall*, 68 Wis. 212, but was passed over with the remark that "the gravity of such a question suggests the propriety of reserving its determination until imperative duty requires." It was thus mentioned for the very purpose of calling attention to the mischief which might result from that class of legislation. Obviously, if the act can be sustained as to any county having a population exceeding 150,000, then an act might be sustained as to any counties having a population of 1,000 or less, or any counties having between 1,000 and 2,000 population, and so on, for each additional 1,000. Thus we might have nearly as many systems of taxation as we have counties in the state. The mischief thus indicated had been fully demonstrated more than twenty years ago. The amendment of 1871 to article IV of the constitution, among other things, provides: "Sec. 31. *The legislature is prohibited* from enacting any special or private laws. . . . 6th. *For assessment or collection of taxes* or for extending the time for the collection thereof. . . . Sec. 32. The legislature shall provide *general laws* for the transaction of *any* business that may be prohibited by section thirty-one of this article, *and all such laws shall be uniform in their*

*operation throughout the state.*" These provisions, in effect, declare that the legislature is prohibited from enacting any special or private laws for the assessment or collection of taxes, or for extending the time for the collection thereof, in Milwaukee county, or any limited number of counties in the state, less than the whole, but the legislature shall provide *general laws* for such assessment and collection, "and all such laws shall be *uniform in their operation throughout the state.*" Manifestly the act for the imposition and collection of the tax in question is not uniform in its operation throughout the state, but, in direct violation of these provisions of the constitution, is not only limited in its operation to Milwaukee county, but is further limited to a certain class of estates in that county. For these obvious reasons we must hold that the act in question is unconstitutional and void. We are pleased to note that two courts of high authority have each recently come to the same conclusion in respect to a similar enactment. *State ex rel. Davidson v. Gorman*, 40 Minn. 232; *In re Ruan St.* 19 Atl. Rep. (Pa.), 219.

6. The Minnesota case cited also holds that such act is in violation of a provision of their constitution, similar to ours, which declares that "every person . . . ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." Sec. 9, art. I. The act in question purports to close the door of the county court against these administrators and this estate, unless they first advance and pay the amount exacted. This looks very much like purchasing the privilege of going into the county court for the settlement of this estate; but it is unnecessary here to determine the question.

TAYLOR, J., *dissenting.* In this action an alternative writ of *mandamus* was issued on the petition of the adminis-

The State ex rel. Sanderson vs. Mann.

trators of the estate of Edward Sanderson, deceased, out of the circuit court of Milwaukee county, directed to the respondent as county judge of said county, commanding him to proceed at once to accept, approve, and file the inventory and appraisal, and thereafter proceed to the allowance and settlement of any account that may be filed by said administrators, and to the settlement of said estate according to law, and without the payment by said administrators to the county treasurer of said county of the sum of $2,631.95, or any sum whatever, or that he may show cause to the contrary thereof, etc. Upon the service of such writ the respondent appeared by John Toohey, his attorney, and the attorneys stipulated that in this proceeding the circuit court may take judicial notice of the population of the several counties of the state, as evidenced by the last official census. After filing this stipulation, the respondent, by his attorney, moved to quash the writ for the reason that the relator, as appears by the relation herein on file, has not complied with the provisions of chapter 176 of the Laws of Wisconsin for 1889. The circuit court quashed the writ, and from the order quashing the same the relators appeal to this court.

The whole controversy in this case depends upon the validity of said ch. 176, Laws of 1889. On the part of the appellant, it is claimed that said chapter is unconstitutional and void, and so the county court could not lawfully refuse to accept the inventory presented by said administrators, and proceed to the allowance of their accounts and the settlement of said estate, without the payment of said sum of $2,631.95; and it is admitted that, if said law is a valid law, then the writ was properly quashed. The law is set out in the statement of the case made in the opinion of this court. The main reason for attacking this law as an unconstitutional law is based upon the contention that the sums required to be paid by said law to the county treasurer are a tax, within the meaning of sec. 1, art. VIII of the

constitution, that being the article on finance.   Although I am not satisfied that the act would be unconstitutional if it could be construed as levying a tax within the meaning of said sec. 1 of the finance article, still I base my opinion as to the validity of the act on the ground that it is not a tax, within the meaning of sec. 1 of said article, and is, as it professes to be, an act passed to create a fund for the payment of the expenses of the county court of Milwaukee county, including the salary of the county judge.

I think it cannot be contended with any degree of plausibility that the county court of Milwaukee county is now anything more than a probate court, as that court existed at the time of the adoption of the constitution, and which court was recognized by the constitution.   Since the jurisdiction of that court to hear and try civil actions at law and in equity has been taken away, it is simply an inferior court created by law, and upon which the jurisdiction of the probate court, as it existed at the time the constitution was adopted and for some years afterwards, was transferred by law, as authorized by the provision in sec. 14, art. VII, of the constitution.   Said sec. 14 reads as follows: " There shall be chosen in each county, by the qualified electors thereof, a judge of probate, who shall hold his office for two years, and until his successor shall be elected and qualified, and whose jurisdiction, powers, and duties shall be prescribed by law: provided, however, that the legislature shall have power to abolish the office of judge of probate in *any county* and to confer probate powers upon such inferior courts as may be established *in said county*." Acting under the authority given by this section of the constitution, the legislature, in the adoption of the Revised Statutes of 1849, abolished the probate courts in this state, and created a county court in each organized county of the state, and conferred the probate powers upon such county courts, and also limited jurisdiction to try civil actions.   See ch. 85, R. S. 1849.

At the time of the adoption of the constitution, and afterwards until the revision of 1849, the probate courts were supported wholly by fees given to the probate judges, and collected from the persons having business in said courts. After the creation of the county courts, and the transfer of the probate powers and jurisdiction to said courts in 1849, the county courts were maintained and the judges paid by fees imposed on persons transacting business in said courts, and the county judges were also paid for their services in the exercise of their jurisdiction as courts having jurisdiction of civil actions by fees and a *per diem* allowance. See secs. 6, 7, ch. 131, R. S. 1849.

In 1854 the act conferring jurisdiction upon the county courts in civil actions was repealed as to all the county courts except the county court of Milwaukee county. See ch. 93, Laws of 1854. Sec. 1 of said act reads as follows: " All the provisions of ch. 86 of the Revised Statutes [1849], and all other provisions of law conferring upon county courts jurisdiction to try and determine civil actions, appeals, or *certioraris,* are hereby repealed: provided, that this act shall not affect the jurisdiction of said court in respect to probate matters or proceedings, and shall not apply to or affect the county court of the county of Milwaukee." This act took effect July 1, 1854.

By ch. 86, R. S. 1849, and ch. 93, Laws of 1854, the jurisdiction of the probate courts, as they existed before 1849, was simply transferred to the county courts, and the county courts in all the counties in the state had no other jurisdiction than such as had been theretofore exercised by the probate courts, except as to the county court of Milwaukee county. Since 1854 jurisdiction in civil actions has been conferred on several of the county courts of the state, in some cases temporarily; and in 1878, when the Revised Statutes of that year were enacted, there were four county courts exercising limited jurisdiction in civil actions, viz.,

Milwaukee, Winnebago, Fond du Lac, and Dodge. All other county courts were simply exercising the jurisdiction pertaining to probate courts alone; and the expenses of these courts, and the compensation of the judges, were provided for by a fee-bill, and the fees were collected from the persons having business transacted in said county courts. The method of paying the county judges by fees continued down to 1868, when ch. 121, Laws of 1868, was enacted, which provides for giving the county judges salaries in lieu of fees in all the counties in the state except in those counties in which the county courts had civil jurisdiction; and in those counties in which salaries were given to the judges they were prohibited from taking fees, and in such counties certain fixed sums, graduated according to the value of the estates to be administered upon, were required to be paid by the executor, administrator, or guardian to the county treasurer, for the use and benefit of the county, and the court was prohibited from allowing the account of any executor, etc., until satisfactory proof was made of the payment of the sum fixed by the statute. Ch. 140, Laws of 1868, made certain provisions relating to the record-books to be kept in the offices of the several county courts, but Milwaukee county was excepted from the provisions of this act, also. Ch. 54, Laws of 1871, amended the law so that the act of 1868 should apply to Manitowoc, although the county court in that county had a very limited jurisdiction in civil actions. Ch. 40, Laws of 1872, simply repealed sec. 4, ch. 121, Laws of 1868, giving compensation instead of fees, and so leaving the administration of all estates in all the counties free, and the expenses of the courts, including the salaries of the judges, a public charge to be paid out of the public money, except those in which the county courts had civil jurisdiction; and in those counties the fee-bill for services for probate matters remained in force. By ch. 98, Laws of 1877, a salary of $5,000 was

given to the county judge of Milwaukee county, and all fees for probate or other services of the county judge were abolished; and sec. 4 of said act declared that the provisions of sec. 4, ch. 121, Laws of 1868, should apply to Milwaukee county. This was the section which required certain fixed sums to be paid by executors, etc., to the county treasurer for the use of the county, etc. The county judges of the other county courts having civil jurisdiction, and in which the fee system was not abolished by ch. 121, Laws of 1868, were Dodge, Fond du Lac, and Winnebago. So that by ch. 121, Laws of 1868, ch. 40, Laws of 1872, which repealed sec. 4 of said ch. 121, and ch. 98, Laws of 1877, which repealed the fee-bill as to the county court of Milwaukee county, and adopted sec. 4, ch. 121, Laws of 1868, in place of the fee-bill, we had this state of things in the state in regard to the county courts in respect to probate matters: In most of the counties the counties paid all the expenses of probate matters. In those counties in which the county courts had civil jurisdiction, except in Milwaukee county, the expenses of the court on probate matters were paid by the collection of fees from the parties having business done in said courts. And in Milwaukee county the expenses of the court as to probate matters were paid, in part at least, by the collection of certain fixed sums from the executors, etc., having business in said court. There were then three systems of paying for the probate business in the state.

The manner of paying the expenses of the probate business in the other counties, except Milwaukee, in which the county courts have civil jurisdiction, has been changed since 1868; and the judges in those counties receive salaries, either fixed by special law or by the county board of their respective counties. I have only cited the statutes showing the existence of the different methods of paying the expenses of probate business in the different counties down to 1877 for the purpose of making it plain that since

1868 there has been no uniform manner of paying such expenses in all the counties of the state, and that no one has questioned the validity of the acts of the legislature creating such diversity of methods in the different counties of the state until the act of 1889 was passed, the validity of which is questioned in this case.

I think it is very clear, from a consideration of the several provisions of our constitution, that it was intended to give the legislature of the state power to collect from the persons requiring the services of our courts, including the probate court and such other courts as might be thereafter created by the legislature, in some shape, a sufficient sum of money to pay the expenses of the court, including the salaries of the judges, should the legislature in its discretion see fit to do so. Sec. 18 of art. VII of the constitution, which is the judiciary article, directs the legislature as follows, viz.: " The legislature shall impose a tax on all civil suits commenced or prosecuted in the municipal, inferior, or circuit courts, which shall constitute a fund to be applied toward the payment of the salary of judges." This provision of the constitution, at the time of its adoption, could only apply to actions in civil cases in the circuit courts, as there were no other courts having original jurisdiction of civil actions, except justices' courts. It was well known that judicial proceedings in probate courts and courts of justices of the peace were paid for by fees charged against the parties having business in such courts, and there is nothing to be found in the constitution which has a tendency to show that the power to continue the same or a similar practice for supporting the administration of the probate courts and justices' courts, was intended to be prohibited. Sec. 18, above quoted, is a clear indication that notwithstanding the constitution had prescribed that fixed salaries should be paid to the circuit judges (see sec. 10, art. VII), there was no intention that such salaries should be paid by

the people at large, but that they should be paid by those having occasion to use the courts, the same as they were required to pay the sheriffs, clerks, and other officers whose services might be required in the administration of justice.

The jurisdiction of all courts in the state, and the manner of their support, except the supreme and circuit courts, was left entirely to the discretion of the legislature. See secs. 2, 14, 15, art. VII, Const. There is nothing in the constitution which in any way directs in what manner justices of the peace, judges of probate, or judges of municipal or inferior courts shall be paid for their services, nor is there anything which prohibits the legislature from providing that those who desire the services of such courts shall pay the justices, judges, and other officers of such courts for the services rendered by them; and for twenty years after the adoption of the constitution the judges of the inferior courts created by the legislature were in the main paid by way of fees for services, and the justices of the peace are still paid in that way.

It is quite evident that the men who framed our constitution did not understand that the provisions of sec. 9 of art. I of the declaration of rights would prevent the legislature from enacting laws to compel those using the courts to contribute to their support. What that article does prohibit need not be further considered in this case, as it is clear that it was not intended to stand in the way of compelling those who use the powers of the courts to contribute to their support. The same men who said in sec. 9, art. I, that every one "ought to obtain justice freely, and without being obliged to purchase it," said in sec. 18, art. VII, that the legislature should make every one who brought a civil action in any of our courts pay a tax to raise a fund to pay the salary of the judges. It is clear, therefore, that the constitution makers did not intend that the state should furnish courts of justice which should be absolutely free

to the suitors therein.   It cannot be very well argued that because the constitution, in sec. 18, art. VII, directs the legislature to levy a tax on all civil actions to raise a fund for the payment of the salaries of the judges, no other way could be resorted to for paying such salaries and the expenses of the courts having no jurisdiction in civil cases. Such judges have no salaries provided by the constitution; and consequently whether their compensation shall be in the shape of salaries or fees, or a fixed sum to be paid by those desiring the services of these courts, must be left to the discretion of the legislature.   There is no other power in the state authorized to determine the manner of their payment.   There is nothing in sec. 18, art. VII, which directs the legislature to impose a tax on all civil suits commenced in certain courts, which requires the legislature to impose a uniform tax on all such suits.   The amount of the tax to be imposed is left to the discretion of the legislature, as well as the amount in each case.   This sec. 18, it seems to me, has no connection with sec. 1 of the finance article; and the taxes required to be imposed by sec. 18 are not regulated or controlled by said sec. 1.   The tax mentioned in sec. 18 is evidently not the kind of tax referred to and regulated by said sec. 1.   Nor can it be urged, with any degree of fair interpretation of the constitution, that fees imposed upon suitors in courts of any kind, whether exercising jurisdiction in civil cases, as in justices' courts, or exercising probate powers, as in most of the county courts of this state, are taxes within the meaning of said sec. 1, art. VIII, of the constitution.   The power to make these courts self-supporting was clearly left to the discretion of the legislature by the constitution; and the imposition of fees, or other reasonable methods for providing for the support and maintenance of such courts, was clearly left to the action of the legislature, and was not in the least controlled by the provision in regard to the finances of the state, or

the taxing power. That this has been the understanding of the legislature, and, so far as I know, of the bar of the state, down to the present time, is shown by the numerous acts of the legislature upon the subject, and the acquiescence of all parties interested in the administration of such laws.

Again, in considering the validity of the law in question, we must take into consideration the fact that under the constitution the powers and jurisdiction of the probate courts are to be fixed by the legislature, and the other courts upon which probate powers may, under the constitution, be conferred by the legislature are to be created, and their jurisdiction prescribed, by the legislature; and, in view of some of the objections made to this law, it must also be borne in mind that under the constitution the legislature were not compelled to provide courts of a similar character in each county of the state, by which the probate powers should be exercised. Under sec. 14, art. VII, the legislature might have established an inferior court in one or more counties of the state, and have conferred probate powers upon such inferior court or courts, and have permitted the constitutional probate courts to have remained in the other counties. Under the constitution, uniformity as to the jurisdiction of the courts which may exercise such powers is not required, but it is expressly provided that courts having no uniformity of jurisdiction may exercise such powers. It seems to me that learned counsel would not contend that, under the powers conferred by sec. 14 of art. VII, the legislature could not create an inferior court in any one county of the state, and confer probate powers on such court, and permit the probate courts, as they existed at the time of the adoption of the constitution, to exercise their powers in all the other counties of the state; nor do I think counsel would claim that the legislature could not, in the establishment of such inferior court in the one county, fix the fees for the services to be rendered

in probate matters either higher or lower than in the other counties, or no fee-bill in the probate courts and a fee-bill in the inferior courts. It certainly cannot be said that fees for services performed for suitors in the courts are taxes, within the meaning of sec. 1 of the finance article, and must therefore be uniform throughout the state.

I think I have shown that there is no constitutional objection to having a diversity of courts in the different counties, having a diversity of jurisdiction, in which the probate powers may be exercised, and that a diversity as to the fee-bills in the different courts would not be a violation of the constitution; and, having shown that the legislature has the power under the constitution to create an inferior court in the county of Milwaukee, and confer upon that court the powers of the probate court, and to fix the fees to be paid to such court in probate proceedings, and has also the power to permit the probate judges to exercise their functions in the other counties of the state, the legislature would also have the power to abolish the fee-bill in the probate courts, and to permit the collection of fees in the inferior court of Milwaukee county, without infringing any provision of the constitution of the state.

It seems to me that it is very clear that the framers of the constitution intended to leave it in the discretion of the legislature to say whether the courts having probate jurisdiction should be self-supporting or not; and, if that be conceded, then it is clear that, in the absence of any restriction in the constitution, it is for the legislature to say in what manner those requiring the services of such courts shall contribute to such support. That the legislature may require those who desire such services to pay fees for services performed is fully admitted by all, and, that being admitted, it would seem to follow that the legislature may also, in its discretion, require those using such courts to contribute to their support in some other way which will

accomplish the same end, and may therefore require the suitors to pay a gross sum for all services in a particular case, instead of a fee for each particular service; and, this being admitted, the basis upon which the contribution shall be made must necessarily rest in the discretion of the legislature, and that it may make such basis for contribution depend upon the amount and value of the estate to be settled and distributed by said court would seem to be at least a reasonable method of fixing the quantum of the contributions. It certainly is not such an unjust and absurd basis of fixing the burdens as will justify this court in saying that it is unauthorized, or an unconstitutional method of doing it; nor do I understand this court to hold the law void upon any such grounds.

The decision is based upon the grounds — *first*, that the imposition of the burden upon the suitor is a tax, within the meaning of the section in the finance article, and then holding it void as a law levying a tax, because the taxation provided by the law violates the rule of uniformity; and, *secondly*, because, it being a law applicable only to the county of Milwaukee, it is a private or local law imposing a tax in violation of the amendment to the constitution which prohibits the legislature from enacting any " special or private law for the assessment or collection of taxes, or extending the time for the collection thereof."

It is urged as one reason for holding that the law imposes a tax, within the meaning of sec. 1 of art. VIII, and the amendment to art. IV of the constitution, because the money paid is required to be paid into the county treasury, and is then disbursed like any of the other public funds. It seems to me that this argument has very little weight in establishing the fact that it is a tax. It may be a legitimate argument to say that funds which are collected and paid into the treasury to be disbursed for public purposes are in the nature of a tax, but, if the money so collected is not essen-

tially a tax, the use that the public may make of it would not make it a tax within the provisions of the constitution. The act says that the charges made against the estates of deceased persons, when such estates are settled and distributed by the probate court of Milwaukee county, shall be a sum to be fixed in a certain way; and the declaration of the legislature is that these charges are to be a substitute for the fees which were formerly exacted in such cases.  It is clear, therefore, that the intention of the legislature was to exact these charges for the support and maintenance of the probate court, and to reimburse the county, which under another statute was required in the first instance to pay such expenses out of the county funds.  The requirement that the moneys collected should be paid into the county treasury was to supply the depletion of the county's money which went to pay the expenses of the court.  If, instead of the exaction of a gross sum of the suitors in the court, the law had required the court to collect of such suitors the fees that had theretofore been exacted in such cases, and pay the sum so collected into the county treasury to supply in whole or in part the depletion of the funds in the treasury which had been drawn therefrom to pay the salaries of the judge and register and other court expenses, the fact that the fees so collected were directed to be paid into the county treasury, to be a part of the general funds of the county, would not convert such fees into taxes, within the meaning of the constitution.

We think it must be held by the court that the legislature, in fixing the sums to be paid by the suitors, fixed them with regard to the expenses the county was compelled to incur for the maintenance of the court, and exacted only so much as would, in its opinion, create a fund equal to such expenditure.  Certainly, there is no presumption that the legislature intended to raise by these exactions a greater sum than was necessarily expended for the support of the

court. What the fact is in regard to this question is not known to this court, and we cannot, upon a mere supposition that the charges made will more than reimburse the county, declare the statute void for the reason that it levies a tax for general purposes in a way not authorized by the constitution. It may be that the collection of the fees formerly allowed by law and paid into the county treasury would more than pay the salaries and other expenses of the court. Still it would hardly be urged that the law which required their collection could be held void upon proof of that fact. There has been a law in force in Milwaukee county ever since 1877 giving fixed salaries to the sheriff and his deputies, paid out of the public funds of the county; and the same law requires the sheriff and his deputies to collect the same fees for services as the same officers are allowed in other counties, and pay the fees so collected into the county treasury to be disbursed as other public money. It is clear that the collection of these fees is intended to reimburse the county in whole or in part for the money paid for the salaries of the sheriff and his deputies. No one seems as yet to have questioned the validity of that law. Whether the county is the gainer or loser by this arrangement, I do not know; nor is the fact material, so far as the constitutionality of the law is concerned.

The only remaining question is as to the power of the legislature to provide for the maintenance of the inferior or county court of Milwaukee county in any other way than by prescribing fixed fees for services rendered, or by the payment of such expenses out of the public funds of the county. That these two methods are allowed by the constitution is not controverted, nor can it be successfully controverted that the legislature may adopt the one method for the courts of some of the counties in the state, and the other method for other counties. I think it cannot be successfully claimed that there is anything in the constitution

which limits the power of the legislature to these two methods for providing for the payment of the expenses of these courts. Nothing has been pointed out in the constitution which by fair implication limits the power of the legislature to the two methods above mentioned. It is therefore clear that, under the well-established rule that the constitution is a limitation upon the legislative authority, and not a grant of such authority, the legislature may adopt such method of collecting money for the payment of the expenses of such courts in such manner and by such means as shall seem just to the legislature and for the best interest of the public, so long as in doing so no constitutional inhibition is violated. This has been the uniform interpretation which has been given to this subject by the legislature; and it has at times provided that in some of the counties the expenses of these courts shall be a general charge upon all the taxable property of the county in which the courts are situated; in other counties, that the expenses of the courts shall be paid in the shape of fees by those who require the exercise of the powers of said courts in the settlement of estates; and still in other counties, by requiring those who desire the services of the courts to pay a gross sum for such service in each case, the amount to be paid to be determined by the value of the estate to be administered upon; and it is now for the first time claimed that the third method is unconstitutional, for the reason that such method of collecting money for the payment of the expenses of said courts is the levying of a tax upon property, and is therefore a void law, because it violates the rule of uniformity of taxation required by sec. 1, art. VIII, of the constitution, and also because it is a private or local law for levying a tax, and therefore violates sec. 31, art. IV, which prohibits such special legislation. As I have said above, it seems to me very clear that this method of raising money to pay for the services of said courts is not the levy-

ing of a tax, within the meaning of either of these provisions of the constitution, but is a charge upon suitors in said courts who desire their services, and is collected solely for the maintenance of such courts. The law does not provide for levying a tax upon the property of the estate which can by any process of law be enforced or collected from such property, but the value of the estate is referred to simply for the purpose of fixing the amount which the suitor must pay for the services of said courts.

If the amounts required to be paid by the suitors are not taxes, within the meaning of the constitutional provisions above referred to, and it be admitted, as I think it must be, that the legislature has the power to require the payment of a gross sum instead of fees in each case, then it is for the legislature to determine what the amount shall be in each case, and declare the method of ascertaining the amount which shall be paid in each case; and the discretion of the legislature in regard to that matter cannot be controlled by this court, unless in the exercise of such discretion the legislature violates some provision of the constitution. *Warner v. Knox,* 50 Wis. 429; *People ex rel. Crowell v. Lawrence,* 41 N. Y. 141.

It is said that the requirement of a fixed sum in each case is an unjust arrangement, from the admitted fact that in some cases the services performed will be necessarily much greater than in others. That this objection is not one that is recognized by the constitution is clear from the fact that the constitution has required the legislature to collect a tax upon all civil actions, and leaves to the legislature the power to determine what such tax in each case shall be, and under that constitutional provision the legislature has almost uniformly levied the same tax on every case, and no question has ever been raised as to the validity of such tax. In the states of Tennessee, Arkansas, and North Carolina the courts have held that, when the consti-

tution is silent upon the subject, the legislature may impose a tax on litigation or judicial proceedings for the support of the courts, and that such tax is not a violation of the bill of rights, which, like our bill of rights, declares that " every person is entitled to a certain remedy in the laws," etc. It cannot be fairly argued that, because the makers of the constitution expressly required that a tax should be imposed upon every civil suit commenced in certain courts, it therefore prohibits the legislature from imposing other taxes upon judicial proceedings in the same or other courts. It is rather to be inferred that, while the constitution imposed a duty upon the legislature in the particular cases mentioned to impose a tax, they intended to leave it to the discretion of the legislature to impose or not to impose such taxes on other cases of a similar character. Being fully satisfied that under the constitution the legislature has the power to require suitors in the inferior and county courts to pay a fixed sum for the services of such courts, for the purpose of reimbursing the public for their support and maintenance, instead of requiring the payment of fees for such services, I am also satisfied that the amount of such gross sum, and the manner of determining the amount to be paid in each case, is a matter for the exercise of the discretion of the legislature; and the remedy for unequal and unjust legislation upon this subject is by an appeal to the legislative power, and not to the courts.

It is urged that the law is unequal and unjust because it does not impose any charge upon estates of a less value than $3,000, and that it is also unjust because it imposes a very large sum upon very large estates, and because it imposes such burdens upon the value of the estates irrespective of the fact that there may be large debts against the estates which, when paid, will leave but little for the beneficiaries. For myself, I do not perceive that any great injustice is done by this method of fixing the charges to be

The State ex rel. Sanderson vs. Mann.

paid; but, if this method of imposing the burden upon the estates is not the most just and equal that could be devised, that fact is no good reason for this court holding the law void so long as no constitutional limit of the power of the legislature has been violated. If the law be unwise or unjust, it may well be left to the discretion and judgment of the legislature to remedy it when that fact is made to appear.

As was said by the great Chief Justice MARSHALL, in *McCulloch v. State*, 4 Wheat. 423, 428: "When the law is not prohibited, and is really calculated to effect any of the objects intrusted to the government, to undertake here to inquire into the degree of its necessity would be to pass the line which circumscribes the judicial department, and to tread on legislative ground." Page 423. And again, speaking of the authority of the legislature to act upon subjects intrusted to its discretion, he says: "The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation." Page 428. It is true the learned justice in that case was speaking of the power of taxation, but it is evident that the same general rule must be applied to legislation upon any other subject, when the power to so legislate is expressly given or not forbidden by the constitution.

I think the order of the circuit court quashing the writ should be affirmed.

*By the Court.*— The order and judgment of the circuit court is reversed, and the cause is remanded with direction to render judgment for the relator, awarding a peremptory writ of *mandamus* as prayed in the petition.