WISCONSIN COLLECTORS ASSOCIATION, INC., and another, Plaintiffs, v. THORP FINANCE CORPORATION and another, Defendants. [Three appeals.] *

*September 6—October 4, 1966.*

* Motion for rehearing denied, with costs, on November 29, 1966.

38

"..."

"..."

For the plaintiffs Wisconsin Collectors Association, Inc., and Hilding Haag there was a brief by *Geisler & Kay* and *Robert J. Kay,* all of Madison, and oral argument by *Robert J. Kay.*

For the defendant Thorp Finance Corporation there were briefs by *Whyte, Hirschboeck, Minahan, Harding*

& *Harland* of Milwaukee, attorneys, and *Edward D. Cleveland* of Milwaukee and *Corwin C. Guell* of Thorp of counsel, and oral argument by *Mr. Cleveland.*

For the defendant Nuesse, commissioner of banks, the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

GORDON, J. This case presents a difficult and important problem touching on the relationships between courts and administrative agencies. We must decide whether a circuit court is jurisdictionally competent to hear and determine issues which could have been presented to an administrative agency. If a court is not jurisdictionally foreclosed, we must also determine whether the court's refusal to resolve the dispute in the case at bar was an abuse of judicial discretion.

The plaintiff sought to have the circuit court adjudge that Thorp was illegally engaging in the collection business in violation of sec. 218.04, Stats. Although Thorp is licensed to engage in various aspects of finance, it is not licensed as a collection agency, and the plaintiffs contend that the purchase of accounts by Thorp in a manner which gives Thorp the option to require the seller of the accounts to repurchase them is a subterfuge for Thorp's participation in the collection business.

Although the point was not raised by way of demurrer or answer, Thorp made a motion "in the nature of a demurrer *ore tenus*" immediately after the first witness was sworn in which it was argued by Thorp that the court had no jurisdiction because the plaintiffs had failed to exhaust their administrative remedies. The court reserved its decision on this question and proceeded to take extensive testimony during the ensuing five days. The record of proceedings before the circuit court covered 830 pages. A total of 86 exhibits were received into evidence. At the conclusion of the trial,

Thorp moved for dismissal on the grounds that the court had no jurisdiction because the commissioner of banks had primary jurisdiction and had failed to exercise it. The circuit court found that the commissioner of banks did have primary jurisdiction and that there had been no exhaustion by the plaintiffs of their administrative remedies.

The trial court's order, from which all parties have appealed, transferred the dispute to the commissioner of banks and directed him to determine within sixty days whether there had been a violation of sec. 218.04, Stats. The order further directed that any party aggrieved by the commissioner's decision must seek review before the consumer credit review board pursuant to secs. 220.037 (7) and 220.035 (2) before submitting the matter to the court. The circuit court's order expressly retained jurisdiction of the matter.

### The Effect of Sec. 263.12, Stats.

The motion by Thorp after the first witness was sworn was almost, if not precisely, denominated a demurrer *ore tenus*. Regardless of its label, it was in effect a demurrer *ore tenus* and as such is inappropriate under sec. 263.12, Stats., unless it relates to the court's lack of jurisdiction over the subject matter. This opinion will subsequently discuss the jurisdictional question.

When this court amended certain practice rules in 1954 and adopted the present sec. 263.12, Stats., it was the court's intention to abrogate the demurrer *ore tenus*. See 265 Wis. vi. However, as noted in our recent decision in *Buckley v. Park Bldg. Corp.* (1966), 31 Wis. (2d) 626, 143 N. W. (2d) 493, a motion for judgment on the pleadings, although closely related to a demurrer *ore tenus*, remains a permissible motion notwithstanding sec. 263.12. We repeat what we said in the *Park Bldg. Corp. Case*, at page 631, and acknowledge that "further

amendment or clarification of sec. 263.12, Stats., may be advisable." Pending any such clarification, we encourage trial courts to be circumspect about entertaining an objection as to a nonjurisdictional matter in the complaint at the onset of trial which was not previously raised either by demurrer or by answer.

### The Doctrine of Primary Jurisdiction.

The defendant Thorp contends that primary jurisdiction rested in the commissioner of banks and that this ousted the circuit court of the power to entertain the plaintiffs' complaint. Thorp further urges that the question of primary jurisdiction affected the subject matter and, accordingly, that the circuit court was wholly devoid of such jurisdiction.

The trial court found that the commissioner of banks had primary jurisdiction which he had not exercised. Although the circuit court in its order recognized that Thorp's motion to dismiss was based on an alleged lack of jurisdiction of the subject matter, the court's formal order did not affirmatively assert the absence of subject-matter jurisdiction. In his decision, the trial judge stated that the primary jurisdiction question "goes to jurisdiction over the subject matter." Nevertheless, the actual order of the court sent the matter to the commissioner of banks for administrative action and went on to provide that "this Court shall retain jurisdiction over the cause while the mandate of this Court is carried out." It is thus not clear whether the trial court regarded itself devoid of jurisdiction of the subject matter or whether it concluded that it had jurisdiction but as a matter of discretion should refer the matter to the commissioner.

There appear to be no Wisconsin cases dealing with the doctrine of primary jurisdiction. The absence of Wisconsin decisional law on this question does not, however, warrant the conclusion that the doctrine is

unestablished. It is generally acknowledged that the primary-jurisdiction rule was first announced in *Texas and Pac. R. v. Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, and it has been the subject of numerous judicial expressions and law review discussions since that time. *Meat Cutters v. Jewel Tea* (1965), 381 U. S. 676, 684–688, 85 Sup. Ct. 1596, 14 L. Ed. (2d) 640; *United States v. Philadelphia Nat. Bank* (1963), 374 U. S. 321, 353, 354, 83 Sup. Ct. 1715, 10 L. Ed. (2d) 915; *Great Northern R. v. Merchants Elevator Co.* (1922), 259 U. S. 285, 42 Sup. Ct. 477, 66 L. Ed. 943; 3 Davis, Administrative Law, pp. 1–55, secs. 19.01–19.09; Convisser, Primary Jurisdiction: The Rule and its Rationalizations, 65 Yale Law Journal (1956), 315; Latta, Primary Jurisdiction in the Regulated Industries and the Antitrust Laws, 30 University of Cincinnati Law Review (1961), 261.

The purpose of the primary-jurisdiction rule is to promote proper relationships between the courts and administrative agencies, and we believe that such purpose can be fully accomplished without also depriving the courts of subject-matter jurisdiction.

We fully recognize that administrative agencies are designed to provide uniformity and consistency in the fields of their specialized knowledge. The expertise that comes with experience and also the fact-finding facility that comes with a more flexible procedure enable the agencies to perform a valuable public function. When an issue arises which fits squarely within the very area for which the agency was created, it would be logical to require prior administrative recourse before a court entertains jurisdiction. Cf. *State ex rel. City Bank & Trust Co. v. Marshall & Ilsley Bank* (1958), 4 Wis. (2d) 315, 90 N. W. (2d) 556.

Nonetheless, we believe it improper to couch such priority in terms of power or jurisdiction. The standard, in our opinion, should not be power but comity. The court

must consider which course would best serve the ends of justice. If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better course would be to decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. The trial court should exercise its discretion with an understanding that the legislature has created the agency in order to afford a systematic method of fact-finding and policy-making and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention.

*Far East Conference v. United States* (1952), 342 U. S. 570, 72 Sup. Ct. 492, 96 L. Ed. 576, is a case which we believe demonstrates that the primary-jurisdiction rule does not negate jurisdiction in the courts. In that case, the question was whether resort could be had to the federal district court before going to the federal maritime board. The United States supreme court held that the matter should have been presented to the board but, speaking for the court, Mr. Justice FRANKFURTER added, at page 577:

"We believe that no purpose will here be served to hold the present action in abeyance in the District Court while the proceeding before the Board and subsequent judicial review or enforcement of its order are being pursued. A similar suit is easily initiated later, if appropriate."

The foregoing declaration would be entirely out of place if the United States supreme court perceived that the primary-jurisdiction rule excised all jurisdiction from the district court.

In his recent text entitled Judicial Control of Administrative Action, Professor Jaffe presents another example, at page 139, which would demonstrate that the primary-

jurisdiction rule does not go to subject-matter jurisdiction:

"... it is clear that if dismissal of the suit would be prejudicial to one of the parties, it can and should be retained on the docket. If, for example, the suit is under the antitrust laws for treble damages, it will be retained pending a reference to an agency which, though it may find in favor of the plaintiff, does not have power to grant treble damages; ..."

The author concludes, at page 141, "Clearly the doctrine of primary jurisdiction as such does not exclude a judicial remedy."

Although the primary-jurisdiction rule was not referred to as such, the case of *Commonwealth Telephone Co. v. Carley* (1927), 192 Wis. 464, 213 N. W. 469, expressed the view that an administrative agency supplanted the court in a jurisdictional sense. Nevertheless, the *Commonwealth Telephone Co. Case* did not actually hold that the court was without jurisdiction of the subject matter; this becomes clear from the statement of the court, at page 472, that "the jurisdiction of the courts is suspended." The use of the word "suspended" demonstrates, in our opinion, that the *Commonwealth Telephone Co. Case* is not out of harmony with the standard which we are now adopting in the case at bar. We would, however, withdraw the statement in the *Commonwealth Telephone Co. Case* that the agency's jurisdiction "for the time being is exclusive."

*Exhaustion of Administrative Remedies.*

Although there are a number of decisions of this court which relate to the failure to exhaust administrative remedies, none of them actually holds that such failure results in the court's loss of subject-matter jurisdiction. *Green v. Jones* (1964), 23 Wis. (2d) 551, 128 N. W. (2d) 1; *Cobb v. Public Service Comm.* (1961), 12 Wis. (2d)

441, 107 N. W. (2d) 595; *James Conroy Family Co. v. Milwaukee* (1944), 246 Wis. 258, 16 N. W. (2d) 814.

To distinguish between the exhaustion rule and the primary-jurisdiction rule, it has been stated that the exhaustion rule relates to judicial review of an *uncompleted* administrative proceedings, whereas the primary-jurisdiction rule applies when there has been a total absence of any formal proceedings before the agency. Jaffe, Judicial Control of Administrative Action, p 121. The two rules were also distinguished in *United States v. Western Pac. R. Co.* (1956), 352 U. S. 59, 63, 77 Sup. Ct. 161, 1 L. Ed. (2d) 126:

" 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

In *Green v. Jones* (1964), 23 Wis. (2d) 551, 560, 128 N. W. (2d) 1, this court described the exhaustion of remedies rule in the following terms:

"Issues surrounding the exhaustion rule arise in cases where a private party is seeking judicial review or judicial relief from a completed administrative determination which affects his interests. Generally, the issue turns on whether the affected party has additional remedies before the administrative tribunal which he must exhaust before seeking judicial review of the legality of the administrative determination."

The learned trial judge in his decision implied that the issue in the case at bar related to primary jurisdiction rather than to exhaustion of remedies, and we agree with that viewpoint. As the trial judge pointed

out, the commissioner did not make an initial determination, and therefore there could be no true question regarding the completion (or "exhaustion") of the administrative remedy; instead the problem was whether the matter could be heard in the circuit court even though it had not been ruled upon by the agency.

The choice of the applicable doctrine was made more difficult in the case at bar because there were in fact informal proceedings before the commissioner of banks even though he did not hold formal hearings and did not issue any orders or rules. We believe the trial court was correct in designating this as a primary-jurisdiction problem and not as an exhaustion problem; however, we are of the opinion that under either doctrine the trial court possessed jurisdiction of the subject matter and had the power to proceed.

*Was There an Abuse of Discretion in the Case at Bar?*

The absence of any previous Wisconsin decisions on the subject of primary jurisdiction imposed the burden upon Judge BARDWELL of traveling upon an uncharted sea. When counsel for Thorp interposed his motion "in the nature of a demurrer *ore tenus*," the trial judge was faced with the dilemma of ruling *ex cathedra* or of continuing with the trial and passing on the question after having had an opportunity to study the issue.

If the circuit court had granted a motion to transmit the matter to the agency before trial or at the very commencement of the trial, it would not have constituted an abuse of discretion. We base this view on the fact that it is debatable whether the alleged subterfuge on the part of Thorp involves factual questions or whether it is primarily a question of law.

However, during five days of trial the circuit court received over 800 pages of testimony and admitted 86 exhibits into evidence. It is our conclusion that after

such an extensive hearing it was an abuse of discretion for the court to order the matter referred to the agency for a fresh start. The court had jurisdiction, and since it engaged in a comprehensive inquiry into the matter, we believe that the court should make its findings of fact and conclusions of law on the full record which has been made.

### The Plaintiffs' Standing to Sue.

Thorp contends that the plaintiffs did not have any legally protectible rights which enable them to bring this action for declaratory relief, relying upon *Wisconsin Pharmaceutical Asso. v. Lee* (1953), 264 Wis. 325, 58 N. W. (2d) 700. In his decision the trial judge commented that it was unnecessary to decide this issue because of his view on the question of primary jurisdiction. On the remand, the court should resolve the issue of the plaintiffs' standing to sue.

### Conclusion.

The order of the circuit court must be reversed because the court abused its discretion in declining to rule on the merits of the controversy after a full and comprehensive court hearing. If the trial court believed that its jurisdiction was amputated by reason of the primary-jurisdiction rule, it was in error. The primary-jurisdiction rule, like the exhaustion of administrative-remedies rule, does not go to subject-matter jurisdiction. Upon the remand, the circuit court should also decide whether the plaintiffs have the capacity to sue.

*By the Court.*—Order reversed, with directions.