STATE EX REL. TERRY, Petitioner, v. TRAEGER, County
Judge, Respondent.

*No. State 20. Argued September 4, 1973.—Decided October 15, 1973.*
(Also reported in 211 N. W. 2d 4.)

491

494

For the petitioner there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   We deem there are three dispositive issues. They are: (1) Whether the letter to the respondent constitutes a complaint or petition sufficient to permit the county court to accept jurisdiction; (2) whether there existed some administrative remedy which petitioner was required to exhaust before bringing suit in court; and (3) whether mandamus is a proper remedy.

Preliminary to a determination of the issues, from the record before us, it is doubtful that the petitioner has a valid claim that he was denied access to the courts by the prison staff and prison regulations. The prison staff did furnish paper and pen or pencil to the petitioner; he did write to the judge of the county court and the judge did receive and acknowledge receipt of it. There is no allegation that the prison staff denied him like access to the federal courts. While the judge rejected his letter it is difficult to say, at this stage, that the prison staff denied him access to the courts. Nevertheless, question of a prisoner's access to the courts is of such importance that it should be discussed.

Whether the sufficiency of the petitioner's letter is examined as a complaint for declaratory relief or as a petition for habeas corpus, the underlying constitutional considerations are the same.

Surely an inmate of a state penal or correctional institution confined there by judicial order loses, temporarily, some of his basic rights as a citizen. His liberty is restrained, he is not free to choose his place or manner

of living, he cannot freely choose employment and he loses other basic rights. Further, prison authorities can and must adopt regulations for the security of the institution, for the safety of all inmates and for the orderly maintenance and administration of the institution.

There are, however, other fundamental rights, tempered by reasonable regulations, that remain inviolate. One such right of constitutional importance is access to the courts.[1] He must be afforded legal remedies after his conviction to not only challenge the legality of his conviction but also the term of his confinement, parole and probation revocation and some matters of in-prison control.

We recognize that the confinement of the prisoner and the necessary reasonable regulations of the prison, in addition to the fact that many prisoners are "unlettered" and most are indigent, make it difficult for a prisoner to obtain legal assistance or to know and observe jurisdictional and procedural requirements in submitting his grievances to a court. Accordingly, we must follow a liberal policy in judging the sufficiency of pro se complaints filed by unlettered and indigent prisoners.[2]

Giving the prisoner's letter to Judge TRAEGER the liberal construction it is entitled to, we believe it does set forth a cause of action.[3] He sufficiently set forth the court and the county by addressing the letter to Judge TRAEGER as County Judge of Dodge county. He identified himself as a segregated prisoner at the Wiscon-

[1] *See Johnson v. Avery* (1969), 393 U. S. 483, 488, 89 Sup. Ct. 747, 21 L. Ed. 2d 718; *Cross v. Powers* (D. C. Wis. 1971), 328 Fed. Supp. 899 and cases cited therein.

[2] *United States v. Morgan* (1954), 346 U. S. 502, 74 Sup. Ct. 247, 98 L. Ed. 248; *Haines v. Kerner* (1972), 404 U. S. 519, 92 Sup. Ct. 594, 30 L. Ed. 2d 652; *Darr v. Burford* (1950), 339 U. S. 200, 70 Sup. Ct. 587, 94 L. Ed. 761; *Johnson v. Avery, supra.*

[3] Sec. 263.03, Stats.

sin State Prison, which can be judicially noticed as being in Dodge county. He stated he was denied his typewriter and sufficient paper he claimed to be necessary to bring a complaint against the institution and thereby denied access to the federal court. He named the officer who denied him these materials and asked for a temporary and a permanent restraining order to decree the prison does not have authority to deny him or other prisoners access to the courts. His statement, giving it liberal construction, is sufficient to constitute a concise statement of the facts giving rise to his claim of denial of access to the courts. His request for restraining orders is adequate to constitute a demand for relief. This we believe to be sufficient to state a cause of action for declaratory relief to challenge the validity of a prison regulation.

Although Judge TRAEGER did not specifically set forth the following reasons, the state contends (1) that the letter could not be accepted as a complaint because it was not verified as required by sec. 263.24, Stats., (2) that no jurisdiction can obtain without the service of a summons, and (3) that the statutory suit tax and filing fee were not paid.

The attorney general, on behalf of the respondent, claims that petitioner's complaint did not meet the formal requirements of pleading in that there was no verification of the pleading and that there was no suit tax filed. Although sec. 263.23, Stats., requires a verification of pleadings, we believe that the failure to verify such would be only a defect in verification. Sec. 263.24 states that, ". . . Where service is made either pursuant to ch. 262 or otherwise, no defect or irregularity in a verification shall defeat the jurisdiction of the court but shall be ground for a timely motion to strike the pleading unless amended. . . ." Therefore it appears that the court need not deny jurisdiction on the basis of lack

of verification, but rather the opposing party can timely make a motion to strike the complaint once it is served. The petitioner would then have an opportunity to amend. Sec. 263.45 allows that: "Any pleading may be once amended by the party of course, . . ." Only the petitioner's failure or refusal to amend his pleading by verification, if demanded by respondent, would prove fatal to his cause of action.

As to the suit tax, it is probable that Mr. Terry would qualify under sec. 271.29, Stats., as an indigent and therefore be entitled to have the suit tax and other fees waived. Given the conditions under which petitioner had to bring the suit and the denial to him of legal materials, it would indeed seem unjust to deny jurisdiction on the grounds of his failure to execute all of the formalities. If necessary the court could easily cure this matter by advising the petitioner that he must establish his indigency before the suit tax or filing fee can be waived.

The attorney general also asserts that under Wisconsin civil procedure the service of a summons is mandatory to confer jurisdiction; that it is the service of the summons that is necessary to meet the "due process" requirements of notice and identification of parties. We believe that if a pro se complaint of an indigent prisoner in a letter is otherwise arguably sufficient to confer jurisdiction, the court can appoint counsel for the indigent to advise and assist in the preparation of necessary documents to satisfy procedural requirements, including a summons.

We have determined above that the pro se letter of the petitioner as least arguably sets forth a cause of action for declaratory relief within the jurisdiction of the court. In addition to an action for declaratory relief, this court, and many federal courts, have expanded a writ of habeas corpus so as to afford the type of relief the petitioner seeks. He claims he is confined in a correctional institution by the state and is being denied rights that are con-

stitutionally protected. If this is a pro se claim by an indigent prisoner that he is being denied rights that are constitutionally protected, the court can treat the pro se letter as a petition or application for a writ of habeas corpus, order the state to respond and appoint counsel for the indigent.

Simply because we have determined that a letter by an indigent prisoner can be construed as a complaint or petition for habeas corpus, it does not follow that every communication to a judge from an indigent prisoner reaches this status. The prisoner's claim must be such that it can be reasonably interpreted to allege such facts, if true, would arguably result in a denial of due process or other constitutionally protected rights retained by a prisoner. Complaints that set forth no facts, those that are frivolous, vindictive, repetitious, obviously made to harass the court or prison officials, or make de minimis complaints concerning the application of obvious reasonable regulations may be summarily denied by the judge.

The respondent also asserts that the petitioner should be required to exhaust his administrative remedies before resorting to the courts.

The primary jurisdiction rule provides that where an administrative remedy is provided by statute, relief should first be sought from the administrative agency and procedures there exhausted before bringing the matter to the court. This court has recognized the rule [4] not as a question of power or jurisdiction but as a matter of comity between the agency and the courts. In *Wisconsin Collectors Asso., supra,* pages 44, 45, we have stated:

". . . The court must consider which course would best serve the ends of justice. If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better

---

[4] *Wisconsin Collectors Asso. v. Thorp Finance Corp.* (1966), 32 Wis. 2d 36, 145 N. W. 2d 33.

course would be to decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. The trial court should exercise its discretion with an understanding that the legislature has created the agency in order to afford a systematic method of fact-finding and policy-making and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention."

We are urged to take the position that the petitioner should be required to exhaust his remedies under the newly adopted Inmate Complaint Review System promulgated under the rule-making power of the department of health & social services. This contention must fail because this administrative remedy was not effective and not available until November 19, 1972. The petitioner's attempt to bring his complaints to the courts were made before that date.

The other administrative remedy provided in secs. 46.03 (6) (b) and 46.16 (7), Stats., are so general, without defined procedures, and so discretionary with the department that they do not constitute, in this instance, an adequate alternative to resort to the courts.

The respondent also contends that mandamus is not available to compel the county court to accept jurisdiction.

In *State ex rel. Johnson v. County Court* (1968), 41 Wis. 2d 188, 192, 163 N. W. 2d 6, we stated:

" 'The duty of the court must be plain, the refusal to proceed within its jurisdiction to perform that duty must be clear, the results of such refusal prejudicial, the remedy, if any, by appeal or writ of error utterly inadequate, and the application for relief by *mandamus* speedy and prompt, in order to justify the issuance of the writ.' "

When Judge TRAEGER refused to accept the petitioner's letter as a complaint or petition for habeas corpus the petitioner had no order or judgment from which to seek a

writ of error or appeal and no other adequate remedy was available to him. As stated above, we believe the judge did have the affirmative duty to take jurisdiction for at least the limited question of whether the petitioner stated a grievance which arguably entitled him to relief. We believe under these circumstances mandamus was the only adequate remedy available to the petitioner at this stage and this court, in its discretion, has accepted his petition for the writ as an original action.

Both parties, perhaps upon invitation of the court, have briefed and argued the constitutionality and the adequacy of the Inmate Complaint Review System. We have considered these arguments, but because this administrative remedy was not available or utilized in this matter we do not have a factual background from which to legally test the criticisms of the many sections. For this reason we deem it advisable not to decide those issues now but let them await a case that comes in a more adequate posture.

We have determined a writ of mandamus should issue directing the county court of Dodge county to assume jurisdiction. We wish to make it clear, however, that we do not decide whether the petitioner has been in fact denied access to the courts nor the reasonableness of any prison regulation which may affect this right. If the prisoner pursues these issues they must be resolved after a proper hearing before the trial court. Further, we advise that Judge TRAEGER in no sense of the word is required to act as an advocate for the petitioner. If the petitioner makes an adequate showing of indigency by affidavit or otherwise the judge may appoint an attorney for him, or in this case, with our approval,[5] request the state public defender to represent and advise the petitioner.

*By the Court.*—The writ of mandamus shall issue consistent with the opinion.

---

[5] *See* sec. 257.23, Stats.

ROBERT W. HANSEN, J. *(dissenting)*. There's a saying in prison circles that "typewriters have replaced the hacksaw" as the way to get out of a penitentiary.[1] Here the prisoner-petitioner wrote to the county judge complaining that for six days after being placed on "idle gang" status, he was not permitted to have a typewriter in his cell. He was permitted to have pen and paper, and he did write to the county judge about being denied a typewriter in his cell. Treated as a petition for prisoner relief, the letter, on its face, failed to state facts sufficient to warrant judicial intervention. So the writer would deny mandamus, but agrees that more is here involved than how this particular judge handled this particular letter from this particular prison inmate.

Because prison inmates often are unable to state their grievances by making out a prima facie case, the question arises as to who and when and how prisoners are to be advised and aided in presenting "the appropriate facts by the appropriate means to the appropriate courts."[2] The question asks, in turn, two questions: (1) Who is to determine whether the petitioning prisoner is an indigent entitled to have legal counsel provided; and (2) who is to advise or assist an indigent prisoner as to petitions directed to in-prison regulations or conditions? The writer submits that both these questions, in this state, are answered by a single statute.

That controlling statute is sec. 257.23, Stats., creating the office of state public defender and providing that the duties of the state public defender shall include:

"(5) . . .
"(a) To determine the indigency subject to court review, of any person convicted of a felony or a gross misdemeanor, . . . if any such person petitions either

---

[1] Charles Larsen, *A Prisoner Looks at Writ-Writing,* 56 Cal. L. Rev. (1968), 342, 345.

[2] Marshall W. Krause, *A Lawyer Looks at Writ-Writing,* 56 Cal. L. Rev. (1968), 371, 372.

the supreme court or the state public defender requesting relief from his conviction, imprisonment, or confinement.

" (b)  At the request of any such person determined by the state public defender to be indigent, or at the request of the supreme court, to prosecute a writ of error, appeal, writ of habeas corpus or other post-conviction remedy in behalf of such person before that court, if the state public defender is first satisfied that there is arguable merit to the proceeding."

No liberal construction of this statute is required to make clear that, if the petitioner here had addressed his letter of complaint to the state public defender's office instead of to a county judge, one of the eight attorneys on the public defender staff would have (1) determined whether or not the petitioner was indigent or without funds to retain counsel; and (2) determined whether there was arguable merit to the complaint stated and, if there was, aided the prisoner to prepare the proper petition for appropriate court relief. As clearly, the statute provides that, if the letter had been addressed to the supreme court or an individual member of it, the communication from the prison inmate certainly would have been referred to the public defender's office for determination of indigency, investigation as to the merits and the providing of legal assistance to the writer of the letter.

Under this statute the duty of the state public defender begins in his determining whether a prisoner-petitioner is indigent. If the prisoner is without funds and entitled to counsel, the defender is to investigate to determine if there is "arguable merit" to the prisoner's complaint. If there is such merit, and only if there is, the defender prepares the proper pleadings for seeking court redress of the grievance. If the complaint does not warrant court proceedings, the defender can explain to the prisoner why it does not.

Wisconsin's legislature pioneered in this delegation to the state public defender of the duty of determining indigency and arguable merit and providing assistance to prison inmates as to postconviction and in-prison remedies. What has been done in Wisconsin has been suggested in other states as the best answer to the problems presented.[3] What those problems can be is suggested by unavoidable consequences of the majority opinion requiring the county judge to consider the letter from the prisoner as either a petition for writ of habeas corpus or as an action for declaratory relief, and to determine if the petitioner is indigent.

If the county judge here elects, on behalf of the prisoner-petitioner, to consider the letter to come closest to being an application for a writ of habeas corpus, he is to disregard the statutory requirement that (1) the petition be verified,[4] and (2) that the petitioner "must state in substance" certain statutorily required allegations.[5] If the county judge, making the decision for and on behalf of the letter-writer, elects to consider the letter as an action for declaratory relief, the judge is commanded to ignore the facts that (1) there is here no summons,[6] (2) the "complaint" is not verified,[7] and (3) the required statutory suit tax and filing fee have not been

[3] *Id.* at page 377, the author stating: "What is needed is a state public defender, expert in handling appeals from criminal convictions—just as the Attorney General is expert in handling the prosecution's case in such appeals—who will also have jurisdiction to investigate complaints from prisoners and file collateral attacks in appropriate cases. If adequately staffed, a state public defender's office could assume much of the burden now carried by a disproportionately small number of members of the California bar and at the same time ease the judicial load by providing a screening service to explain to prisoners why their complaints do not appear to entitle them to legal relief."

[4] As required by sec. 292.04, Stats.

[5] As required by sec. 292.04, Stats.

[6] As required by sec. 262.02, Stats.

[7] As required by sec. 263.24, Stats.

paid.[8] As to such statutory prerequisites to seeking a writ or filing an action, the majority suggest that ". . . the court can appoint counsel for the indigent to advise and assist in the preparation of necessary documents to satisfy procedural requirements. . . ." Instead of aiding the prisoner-petitioner to set sail on the right course, the court-appointed counsel is to come on board, repair kit in hand, to start patching the obvious holes in the hull of the ship. And even such mid-course legal assistance, the majority opinion concludes, is to be made available only ". . . If the petitioner makes an adequate showing of indigency by affidavit or otherwise. . . ."

Does it make good sense that all of these complications must follow, solely and simply because a letter was sent to a county judge instead of to a supreme court justice or directly to the state public defender's office? Is the address on the envelope to make unavailable the clear statutory mandate that the state public defender determine indigency and counsel and assist prisoner-petitioners as to postconviction and in-prison rights and remedies? Must local judges struggle with questions of indigency and procedures available to prisoner-petitioners when the state public defender's office was created, at considerable public expense, to handle exactly such matters and give exactly such legal counsel to prison inmates? The writer thinks not.

Seeing the petitioner's letter about the typewriter as no more than a misdirected letter that should have been sent, under the statute, to the state public defender, the writer would deny mandamus, postscripting only that the letter be forwarded to the state public defender for appropriate action. The majority opinion holds that the judge ". . . in this case, with our approval, [may] request the state public defender to represent and advise

---

[8] As required by sec. 271.21, Stats., unless as provided in sec. 271.29, the plaintiff in the civil action files "his affidavit that because of his poverty he is unable to pay the costs of said action or proceeding."

the petitioner." The writer would take a more direct route by holding that, in any case, the judge, without seeking our approval, may and ought send a letter of complaint from a prison inmate to the state public defender whose duty it is to advise and counsel prisoner-petitioners.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.