Patricia S. TREIBER, Patrick W. Cotter, and First Wisconsin Trust Company, As Co-personal Representatives of the Estate of Irene M. Stackner, Plaintiffs-Respondents,

v.

Robert R. KNOLL, Milwaukee County Register in Probate, Paul J. McCormack, Milwaukee County Treasurer, Defendants-Appellants,

Charles P. SMITH, Treasurer for the State of Wisconsin, Defendant.

Supreme Court

*No. 85–2115. Argued October 28, 1986.—Decided January 6, 1987.*

(On bypass of the court of appeals.)

(Also reported in 398 N.W.2d 756.)

For the defendants-appellants there were briefs by *George E. Rice*, corporation counsel, and *John Jorgensen*, assistant corporation counsel, and oral argument by *Messrs. Rice* and *Jorgensen*.

For the plaintiffs-respondents there was a brief by *Jackson M. Bruce, Jr., John A. Rothstein* and *Quarles & Brady*, Milwaukee, and oral argument by *Mr. Bruce*.

WILLIAM G. CALLOW, J. This is an appeal from a judgment of the circuit court for Milwaukee County, Judge Leo B. Hanley presiding, which held sec. 814.66(1)(a), Stats., unconstitutional. At the request of the parties, this court granted bypass, pursuant to sec. (Rule) 809.60, Stats.

Section 814.66(1)(a), Stats., establishes the filing fees to be collected by the register in probate in proceedings concerning decedents' estates. This appeal raises the question of whether sec. 814.66(1)(a) is unconstitutional on either of the following grounds: (1) It constitutes a denial of equal protection of the laws under Article I, Section 1 of the Wisconsin Constitution or the fourteenth amendment of the Constitution of the United States in that it establishes statutory classifications for which there exists no reasonable basis; or (2) it violates Article I, Section 9 of the Wisconsin Constitution, which provides that "[every person] ought to obtain justice freely, and without being obliged to purchase it." Because we conclude that sec. 814.66(1)(a) violates neither the guarantees of equal protection under both the Wisconsin and United States Constitu-

tions nor Article I, Section 9 of the Wisconsin Constitution, we reverse the judgment of the circuit court.

Irene M. Stackner, a Wisconsin resident, died testate on September 27, 1980. On October 10, 1980, Mrs. Stackner's personal representatives[1] filed a petition with the Milwaukee County circuit court, seeking probate of the Stackner estate (Estate). Thereafter, on February 24, 1984, the Estate filed an inventory showing assets of $12,106,073.93, debts of $3,511,125.68, and a net value of $8,594,948.25.

Pursuant to sec. 814.66(1)(a), Stats., a probate filing fee of $12,106.07 was to be paid at the time that the Estate's inventory was filed with the probate court. [All references in this opinion are to the 1983–84 Wisconsin statutes unless otherwise noted.] The Estate refused to pay the required fee. On February 27, 1984, Robert R. Knoll, the Milwaukee County Register in Probate, wrote and requested that the Estate pay the prescribed filing fee. The Estate, after again refusing to pay the required fee, commenced a declaratory judgment action in the Milwaukee County circuit court, seeking a ruling that sec. 814.66(1)(a)[2] was unconstitutional.

---

[1] Although the petition was filed by Mrs. Stackner's personal representatives, the interest at stake in this case is that of the Stackner estate. We will therefore refer to the personal representatives as the Estate.

[2] Section 814.66(1)(a), Stats., provides, in pertinent part:

"(1) The register in probate shall collect the following fees:

"(a) For filing a petition whereby any proceeding in estates of deceased persons is commenced, if the gross estate or value of the property is $10,000 or less, a fee of $10; if the gross estate is more than $10,000, a fee of 0.1% of the amount of the gross estate. The fees shall be paid at the time of the filing of the inventory or other documents setting forth the value of the estate in the proceedings."

Following trial, the court found sec. 814.66(1)(a), Stats., unconstitutional on both its face and as applied to the Stackner estate. In reaching its conclusion, the court made a number of factual findings. According to the court, the services performed by the register in probate are the same regardless of the size of the testator's estate. Furthermore, the amount of work to administer an uncontested estate is approximately the same in a small estate as in a large estate. A typical probate file, not involving a contest, involves a number of documents which are statutorily required in order to complete the estate; those documents are the same regardless of the size of the estate. Additionally, the volume of work generated by the Estate would be required in all estates regardless of size or valuation.

Based on the above, the court in its findings of fact and conclusions of law stated that there was "no necessary correlation between the sums to be paid [under sec. 814.66(1)(a), Stats.](widely different in amounts with respect to estates of different values) and the nature of the proceedings, or the character or extent of the services which may be required of the probate system." Because the court concluded there was no necessary correlation (rational relationship) between the fees charged and the cost to the court in administering an estate, the court ruled that sec. 814.66(1)(a) was unconstitutional in that (1) it constituted a purchase of justice as prohibited under Article I, Section 9 of the Wisconsin Constitution; and (2) it violated the constitutional protections of "equal protection" under Article 1, Section 1 of the Wisconsin Constitution and the fourteenth amendment of the United States Constitution. On March 13, 1986, the Estate, joined by Milwaukee

County, filed a petition to bypass the court of appeals. We accepted the petition to bypass on April 8, 1986.

We must determine in this case (1) whether sec. 814.66(1)(a), Stats., violates the equal protection guarantees of either the State Constitution or the Federal Constitution and, if it does not, (2) whether sec. 814.66(1)(a) constitutes a purchase of justice.

In determining whether sec. 814.66(1)(a), Stats., is constitutional, the trial court's findings of evidentiary or historical facts will be upheld unless they are clearly erroneous. *See State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). However, the trial court's holding that sec. 814.66(1)(a) is unconstitutional is a question of law, and thus we do not give deference to the trial court's decision. *See State v. Ludwig*, 124 Wis. 2d 600, 607, 369 N.W.2d 722 (1985).

In reviewing the constitutionality of sec. 814.66(1)(a), Stats., we recognize that there is a strong presumption that a legislative enactment is constitutional. *State v. Cissell*, 127 Wis. 2d 205, 214, 378 N.W.2d 691 (1985). A party who challenges the constitutionality of an act carries a heavy burden of persuasion. Our cases make it clear that "[i]t is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973); *County of Portage v. Steinpreis*,

104 Wis. 2d 466, 478, 312 N.W.2d 731 (1981). We affirm our previous statement that:

> "If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court." *State ex rel. Carnation Milk Products Co. v. Emery*, 178 Wis. 147, 160, 189 N.W. 564 (1922); *State v. Interstate Blood Bank, Inc.*, 65 Wis. 2d 482, 489, 222 N.W.2d 912 (1974).

We begin by noting that the disputed assessment, although designated a "fee" in the statute, is in reality a tax upon the disposition of one's property upon death. This court has previously held that, where the amount of an exaction is in no way dependent upon the amount of services provided by the judge or register in probate but depends entirely upon the valuation of the estate, then the exaction is a tax. *The State ex rel. Sanderson v. Mann*, 76 Wis. 469, 474–75, 46 N.W. 51 (1890); *see also In Re Estate of Zoller*, 53 Del. 448, 451, 171 A. 2d 375, 376 (1961) (court quoted 51 Am. Jur., *Taxation*, sec. 14 (1944), for the proposition that an arbitrary standard of probate fees graded according to the value of the estate and manifestly intended for the purpose of raising revenue has been decided to be a tax). Under sec. 814.66(1)(a), Stats., the exaction charged estates is based entirely upon the value of the estate; it is not based upon the services performed by the probate court. Furthermore, it appears from the legislative history that

the exaction was designed to raise revenue to pay for the court system. *See generally Legislative Council of Wisconsin, Technical Advisory Committee on Court Fees and Costs, Summary of Proceedings* (1980). We therefore conclude that the exaction required by sec. 814.66(1)(a) is a tax.

Having held that the exaction under sec. 814.66(1)(a), Stats., constitutes a tax, we note the greater presumption of constitutionality given to tax statutes. This court has repeatedly stated:

> "[W]here a tax measure is involved, the presumption of constitutionality is strongest. The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function." *Simanco, Inc. v. Department of Revenue*, 57 Wis. 2d 47, 54, 203 N.W. 2d 648 (1973); *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 625, 279 N.W.2d 213 (1979).

The United States Supreme Court has also recognized this broad discretion in the legislature as to tax legislation. According to the Court, "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Madden v. Kentucky*, 309 U.S. 83, 88 (1940). Furthermore, the Supreme Court has recognized that "[n]o scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all

local fiscal schemes become subjects of criticism under the Equal Protection Clause." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 41 (1973), *reh'g. denied*, 411 U.S. 959.

With this in mind, we turn now to the question of whether sec. 814.66(1)(a), Stats., is unconstitutional because it violates the constitutional guarantee of equal protection under either Article I, Section 1 of the Wisconsin Constitution[3] or the fourteenth amendment of the United States Constitution.[4] We find that the classification found unconstitutional by the circuit court involves the class "probate litigants" in that probate fees vary according to the value of the estate.[5] ·

---

[3] Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to serve these rights, governments are instituted, deriving their just powers from the consent of the governed."

We have previously interpreted Article I, Section 1 of the Wisconsin Constitution to provide rights substantially similar to those now protected by the fourteenth amendment of the United States Constitution. *Pauly v. Keebler*, 175 Wis. 428, 430–31, 185 N.W. 554 (1921).

[4] The equal protection clause is included in the fourteenth amendment of the United States Constitution which states, in pertinent part: "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

[5] We do not find the Estate's argument, that the appropriate class is "all litigants," to be persuasive. The equal protection clause requires equal protection and security for all under like circumstances. *See In Matter of Complaint Against Seraphim*, 97 Wis. 2d 485, 496, 294 N.W.2d 485 (1980); *State ex rel. Blockwitz v. Diehl*, 198 Wis. 326, 330, 223 N.W. 852 (1929). Absent similarity, disparate treatment does not present a claim under the equal protection clause of the fourteenth amendment, let alone a violation of equal protection. *See Desris v. City of Kenosha, Wis.*, 687 F. 2d 1117, 1119, 1121

67

■

We begin our consideration of the equal protection issue by reiterating that the protection afforded by Article I, Section 1 of the Wisconsin Constitution is substantially equivalent to the equal protection clause of the fourteenth amendment of the United States Constitution. *See State ex rel. Fort Howard Paper Co. v. Lake District Board,* 82 Wis. 2d 491, 511 n. 10, 263 N.W.2d 178 (1978). Because of this similarity in protection, the same legal analysis will be applied to test the constitutionality of the statute under the equal protection guarantees of either Constitution.

■■

The equal protection clause of the fourteenth amendment is designed to assure that those who are similarly situated will be treated similarly. *Desris v. City of Kenosha, Wis.,* 687 F. 2d 1117, 1119 (7th Cir. 1982), *cert. denied,* 462 U.S. 1120 (1983); *see Rubin v. City of Wauwatosa,* 116 Wis. 2d 305, 317 n. 3, 342 N.W.2d 451 (Ct. App. 1983). Thus, where those who are similarly

---

(7th Cir. 1982), *cert. denied,* 462 U.S. 1120 (1983); *Tigner v. Texas,* 310 U.S. 141, 147 (1940). The claims brought by "all litigants" encompass a broad spectrum of causes of action, relief sought, and remedies. Due to this considerable variety of litigants, we are left with the conclusion that probate and non-probate litigants are not similarly situated.

In particular, with probate litigants there exists an ascertainable fund from which a tax can readily be paid. In a typical tort case no such ascertainable fund exists. A percentage tax based on damages claimed in a tort case would subject aggrieved litigants to a tax which might prohibit them from seeking redress in court. Because "all litigants" are thus not similarly situated, there is no equal protection violation, even if they are treated dissimilarly. We therefore reject "all litigants" as the classification upon which the circuit court held sec. 814.66(1)(a), Stats., unconstitutional.

situated are treated similarly, no equal protection violation occurs. Because we conclude that all probate litigants in Wisconsin are similarly situated and similarly treated, we hold that the tax exacted by sec. 814.66(1)(a), Stats., does not violate the equal protection guarantees of either the Wisconsin or the United States Constitutions.

All probate litigants have an ascertainable estate which, through probate, is distributed to the decedents' heirs or beneficiaries, as well as creditors, and thus are similarly situated. Under sec. 814.66(1)(a) all estates entering probate, except that portion subject to recorded liens and mortgages, are assessed a tax equal to 0.1 percent of the gross estate.[6] All estates, for the purposes of calculating the tax due, are decreased by the amount of any unpaid duly recorded filed liens and mortgages on real property. The 0.1 percent tax is then uniformly applied to all gross estates, regardless of their size. This exaction, paid equally by all estates, taxes in proportion to the relative distributive benefits received from the judgment of the probate court, and thus constitutes similar treatment of all probate litigants. Having determined that all probate litigants are similarly situated and similarly treated, we conclude that sec. 814.66(1)(a) does not violate the equal protection guarantees of either the Wisconsin or United States Constitutions.

However, assuming arguendo that the tax imposed by sec. 814.66(1)(a), Stats., does not treat all probate litigants equally, we nevertheless conclude that sec.

---

[6] Where a gross estate is less than $10,000, a flat tax of $10 is charged. This tax, although it exceeds 0.1 percent of the gross estate, is de minimis and does not rise to the level of a violation of the constitutional guarantee of equal protection.

814.66(1)(a) is constitutional. This court has previously explained the analysis to be used in evaluating a statute challenged on equal protection grounds. "[U]nless a statute may be said to affect a 'fundamental right' or to create a classification based on a 'suspect' criterion, the standard this court uses in reviewing the constitutionality of a statutory classification is the 'rational basis' test." *Hilber v. State*, 89 Wis.2d 49, 54, 277 N.W.2d 839 (1979). Where a "fundamental right" or "suspect class" is involved, the statute must pass strict scrutiny. *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506, 261 N.W.2d 434 (1978). However, regardless of whether section 814.66(1)(a) affects a fundamental right or creates a classification based upon a "suspect class," we find that sec. 814.66(1)(a) is constitutional because it withstands strict scrutiny.[7]

■■

Under strict scrutiny, a statutory classification will be upheld only if the classification promotes compelling government interests and if it is narrowly drawn to express only such interests. *See Roe v. Wade*, 410 U.S. 113, 155 (1973), *reh'g. denied*, 410 U.S. 959. We find that sec. 814.66(1)(a), Stats., meets this test.

First, the tax imposed promotes a compelling government interest. As we noted in *Nunnemacher v. State*, 129 Wis. 190, 201, 108 N.W. 627 (1906), the right to dispose of property by will has been recognized for a long time. This right to dispose of one's property by will would be meaningless without a mechanism for effectu-

---

[7] Although as a general rule a statute is presumed constitutional, this presumption of constitutionality disappears if a statutory classification is based upon a suspect class, *Harris v. McRae*, 448 U.S. 297, 322 (1980), *reh'g. denied*, 448 U.S. 917, or impinges upon a fundamental right, *Mobile v. Bolden*, 446 U.S. 55, 76 (1980).

ating one's will. Having established the probate court system as the primary means of providing for the orderly distribution of one's property after death, it follows that the government must raise revenues to fund that system. We therefore conclude that the taxation of an estate as a precondition to the use of the probate system promotes the compelling government interest in a funded probate system.

Next we look to see if sec. 814.66(1)(a), Stats., is narrowly drawn to achieve this purpose. Section 814.66(1)(a) seeks to make the probate system substantially self-sustaining and paid for by those who use it rather than by total funding from general tax revenues drawn from the public at large. To that end, each estate is assessed a tax in relation to the extent to which the decedent derives a benefit (through distribution of the estate assets) from the judgment of the probate system. Under the means chosen by the legislature, users of the probate court contribute toward the operating expenses of the probate system only out of the assets distributed through the probate court. Furthermore, by imposing the tax on the gross estate, the tax takes into consideration that a decedent benefits not only by having assets flow to beneficiaries and heirs but also by having an orderly verification and satisfaction of outstanding debts.[8] We therefore conclude that sec. 814.66(1)(a) is narrowly drawn to promote the government's compelling interest in providing a probate system.

---

[8] The reduction in the taxable estate allowed for recorded mortgages on real property acknowledges the distinction between mortgaged real property where the decedent is often only a nominal owner versus other debts which generally do not diminish the decedent's ownership interest in his or her assets.

The fact that sec. 814.66(3), Stats., provides for the paying of all fees collected, one-half to the county treasurer and one-half to the state general fund, does not negate our conclusion that the statute is narrowly drawn. We believe we can safely assume that the state and the county both spend more on maintaining the probate system than either receives under sec. 814.66(3). To require the legislature to pay the money into a "probate fund," as opposed to a general fund, would emphasize form over substance. The necessity that a statute be narrowly drawn does not require such formalities. We therefore conclude that sec. 814.66(1)(a) does not violate the equal protection guarantees of either the Wisconsin or United States Constitutions.

Having determined that sec. 814.66(1)(a), Stats., does not violate the equal protection guarantees of either the Wisconsin or United States Constitutions, we now turn to the question of whether sec. 814.66(1)(a) is unconstitutional because it constitutes a purchase of justice as prohibited under Article I, Section 9 of the Wisconsin Constitution. Article I, Section 9 provides, in pertinent part, that "[e]very person ... ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." This court, in explaining the history and meaning of Article I, Section 9, has stated:

> "That provision is very old. Its history dates back to the days of Magna Carta. It was designed to prevent a species of official exactions made as the price of delaying or expediting justice. From the lowest officer to the king himself, in the olden times, bribes were freely demanded and taken to procure

72

the benefits of the laws. They bore no relation whatever to our system of exactions for expenses of litigation, called costs, or the charge as a tax on suits, imposed under laws which bear equally upon all; but they were arbitrary exactions sanctioned by the manners of the times, that went to the personal benefit of the judicial head or body controlling the execution of the law, or to servants or officers connected therewith. It was such abuse, among others, that the barons of England forced King John to abolish by granting the Magna Carta. It contained the following as one of the guaranteed limitations upon kingly prerogatives: 'We will not sell the right and justice to anyone, nor will we refuse it, or put if off.'" *Christianson v. The Pioneer Furniture Co.*, 101 Wis. 343, 347-48, 77 N.W. 174, 77 N.W. 917 (1898).

In light of this history, Article 1, Section 9 of the Wisconsin Constitution has been interpreted not to guarantee that access to justice will be free of charge but to guarantee that no one shall have to bribe or make arbitrary payments to officials in order to obtain justice. *State ex rel. Baker v. County Court*, 29 Wis. 2d 1, 12, 138 N.W.2d 162 (1965).

 The Estate argues that, since the probate filing fee bears no direct relationship to the services received in probate, the exaction of such a fee constitutes the type of exaction proscribed by Article I, Section 9. According to the Estate, the filing fee amounts to selling access to the court in violation of Article I, Section 9. We find this argument unpersuasive. As noted earlier, the type of exaction proscribed by Article I, Section 9 is the exaction of arbitrary bribes for the personal enrichment of those who control and administer the justice system. Section 814.66(1)(a), Stats., requires that each estate

pay a uniform statutorily established filing fee prior to receiving the services of the probate court. There is no indicia of any bribing or arbitrary payments before an estate may obtain justice. The exaction from any particular estate does not go to the personal benefit of any member of the judiciary or to servants or officers connected therewith. There is no bargaining by each estate as to the fee to be paid before entering probate. No estate is left to wonder if it will be able to receive the benefit of the services of the probate court. We therefore conclude that the tax exacted by sec. 814.66(1)(a) does not sell justice and thus does not violate Article I, Section 9 of the Wisconsin Constitution.

Finally, the Estate argues that, because the right to transfer property by will and the right of free access to the courts are constitutional rights, the legislature is prohibited from taxing these rights.[9] We disagree. First, this court, when it originally recognized that "the right to demand that property pass by inheritance or will is an inherent right," rejected the contention that this right could not be taxed. *Nunnemacher*, 129 Wis. at 202–03. This court noted that the power to regulate and tax "entered into and modified the inherent right to possess, transmit, and will property, at the time the constitution was adopted, so that the inherent right recognized and preserved by the constitution was and is a right subject to reasonable regulation and taxation." *Id.* at 204. Thus a reasonable tax may be imposed upon the right to dispose of one's property by will. In this case the tax of $12,106.07 charged to the Estate is one one-thou-

---

[9] Our analysis of the Estate's claim of a constitutional right of free access to the courts involves a consideration of due process. *See Boddie v. Connecticut*, 401 U.S. 371 (1971).

sandth (0.1 percent) of the gross estate. The tax neither impairs access to the probate system nor discourages the use of a will to dispose of one's property. Although $12,106.07 is a large sum of money, it is modest when considered in relation to the value of the taxable estate. We conclude that it is a reasonable tax.

Second, we find no support for the Estate's contention that there exists a constitutional right of free access to the courts. While numerous cases provide support for the proposition that free access to the courts in criminal matters is a constitutional right,[10] we know of no cases which address the issue of courts being freely accessible to the populace in civil matters. Furthermore, since this court has previously held that the fundamental right to dispose of one's property is subject to reasonable taxation, it would be anomalous to hold that the effectuation of a will by a court could not also be subject to reasonable taxation. Accordingly, we find no merit to the Estate's free access contention.

In *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971), the United States Supreme Court held that "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." Thus one who is indigent may not be denied court access where such access is essential to the exercise of a fundamental right.

The fact that under *Boddie* an indigent cannot be denied access to the courts to effectuate a fundamental

---

[10] *See State ex rel. Terry v. Traeger*, 60 Wis. 2d 490, 496, 211 N.W.2d 4 (1973); *Johnson v. Avery*, 393 U.S. 483, 488 (1969).

right does not mean that the state must provide free access to those who can afford to pay. We conclude that the right to court access, where a fundamental interest is involved, is not a guarantee of free access for all but instead is a right not to be denied court access because of indigency.

In the present case the Estate has substantial value. There is no doubt that the Estate will not be denied access due to the exaction under sec. 814.66(1)(a), Stats. Furthermore, sec. 814.29(1), Stats.,[11] provides for a waiver of any service or fee if the person bringing the action is unable, because of poverty, to pay the costs of the proceedings. We therefore conclude that the tax imposed by sec. 814.66(1)(a) is consistent with the constitutional right to court access.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded for proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree that the assessment in issue may be upheld as a tax. I do not join the dicta regarding federal equal protection or art. I, secs. 1 and 9 of the Wisconsin Constitution.

---

[11] Section 814.29(1), Stats., provides, in pertinent part: "Any person may commence . . . any action or proceeding in any court . . . without being required to . . . pay any service or fee, upon filing in the court, and receiving approval of the affidavit by the court, his or her affidavit that because of his or her poverty the person is unable to pay the costs of the action or proceeding." Access to the court involving a fundamental right is subject to the same rule whether the exaction is identified as a service, fee, or tax.