IN the MATTER OF the GUARDIANSHIP OF RUTH E. J.:

PROFESSIONAL GUARDIANSHIPS, INC., Petitioner-Appellant,

v.

RUTH E. J., Respondent-Respondent.

Court of Appeals

*No. 95–2010. Submitted on briefs August 17, 1995.—Decided September 6, 1995.*

(Also reported in 540 N.W.2d 213.)

794

795

On behalf of petitioner-appellant, the cause was submitted on the brief of *Steven L. Miller* of *Miller & Miller* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Ruth E. J.'s guardian appeals the dismissal of a motion seeking an order permitting Ruth's doctors to perform electroconvulsive treatment (ECT) on her. The circuit court dismissed the motion because Ruth is incompetent and could not give consent to ECT as required by § 51.61(1)(k), STATS.[1] In a summary order pursuant to an accelerated appeal, we reversed the circuit court on the grounds that § 51.61(1)(k), as applied in this case, unconstitutionally deprived the ward of her right to ECT because of her

---

[1] Section 51.61(1)(k), STATS., provides that, with exceptions not relevant here, a patient shall:

Have a right not to be subjected to treatment procedures such as psychosurgery, or other drastic treatment procedures without the express and informed consent of the patient after consultation with his or her counsel and legal guardian, if any. Express and informed consent of the patient after consultation with the patient's counsel and legal guardian, if any, is required for the use of electroconvulsive treatment.

inability to express "informed consent." We now detail the basis of that order.[2]

The parties have stipulated to the essential facts for the purpose of this appeal. All parties, with the exception of the guardian, have waived their briefing rights.

Ruth is incompetent, and the state has appointed a guardian for her. As a result of severe depression, she refuses to eat and is near dehydration and starvation. Ruth's health care providers feed her with feeding tubes; however, this feeding presents the inherent danger of aspiration pneumonia.

Ruth's doctors have determined that ECT remains the only treatment option with any chance of successfully and timely lifting Ruth's depression. Dr. Edward Orman, Ruth's attending physician, concluded that without ECT there is a good possibility she will die from her depression-related health problems. However, due to her mental condition, Ruth cannot express a preference for or against ECT.

As a result of Orman's evaluations, Ruth's guardian brought a motion before the circuit court seeking an order to permit ECT without consent. The circuit court issued an order denying the motion on grounds that § 51.61(1)(k), STATS., does not grant a circuit court authority to order ECT without the patient's consent. Although not raised at trial, Ruth's guardian appeals on the grounds that § 51.61(1)(k) would be unconstitutional as applied to Ruth.[3]

---

[2] Because the circuit court declined to hear the merits of the motion on grounds it had no authority, it did not decide to accept the parties' stipulation of facts as a factual basis for an order granting relief.

[3] Guardians may, under some circumstances, exercise substitute judgment for an incompetent ward in areas of medical

We have discretionary authority to consider a constitutional issue raised for the first time on appeal. We review a constitutional issue raised for the first time on appeal if "it is in the best interests of justice to do so, if both parties have had an opportunity to brief the issue and if there are no factual issues that need resolution." *In re Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846, 856 (1983), *appeal dismissed sub nom. Buhse v. Krueger*, 465 U.S. 1016 (1984) (quoting *Laufenberg v. Cosmetology Exam. Bd.*, 87 Wis. 2d 175, 187, 274 N.W.2d 618, 624 (1979)).

This case meets the aforementioned requirements. Justice compels us to review the issue because the effects of Ruth's depression threaten her life and the requirements of § 51.61(1)(k), STATS., deny her the only treatment likely to reverse her condition. All parties have had the opportunity to brief the issue, and every party except the appellant has waived its briefing rights.

Finally, no factual issues need resolution because the parties have stipulated to the facts necessary to decide this issue. Therefore, we will address the constitutional challenges to § 51.61(1)(k), STATS. The constitutionality of a statute is a question of law that we review de novo. *State v. Hanson*, 182 Wis. 2d 481, 485, 513 N.W.2d 700, 701 (Ct. App. 1994). We presume all statutes are constitutional, and the challenger must prove unconstitutionality beyond a reasonable doubt.

treatment. *See In re L.W.*, 167 Wis. 2d 53, 78-81, nn.11 and 12, 482 N.W.2d 60, 69-70 nn. 11 and 12 (1992). We need not address the limits of that doctrine to the facts of this case because the issue is not raised.

*Quinn v. Dodgeville*, 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985).

■

The guardian's brief does not specify whether the guardian challenges § 51.61(1)(k), STATS., under the equal protection clause of the Wisconsin or the United States Constitution.[4] However, the Wisconsin Supreme Court has held that these two equal protection clauses are substantially equivalent. *Funk v. Wollin Silo & Equip.*, 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244, 245 n.2 (1989). Under equal protection law, if a statute intrudes upon a fundamental right or makes a suspect classification, we analyze the statute with strict scrutiny. *Treiber v. Knoll*, 135 Wis. 2d 58, 70, 398 N.W.2d 756, 760 (1987). Under strict scrutiny, we require the statute to be narrowly drawn to further a compelling government interest. *Id.* If the statute does not affect a "fundamental right" or create a "suspect classification," we apply the rational basis test to determine if the legislature has acted irrationally or arbitrarily. *Id.*

---

[4] The due process and equal protection clauses of the Wisconsin Constitution provide: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." WIS. CONST. art. I, § 1.

The due process and equal protection clauses of the United States Constitution prohibit a state from depriving "any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

We conclude that § 51.61(1)(k), STATS., denies Ruth a fundamental right.[5] "Fundamental rights" are those that are explicitly or implicitly protected by the Federal Constitution. *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973). The Constitution explicitly protects the right to life. U.S. CONST. amend. XIV, § 1. The stipulated facts indicate that § 51.61(1)(k) denies Ruth the right to her life because it denies her the only medical treatment likely to save her life. Thus, we will apply strict scrutiny to § 51.61(1)(k).

Presumably the legislature enacted § 51.61(1)(k), STATS., to protect patients from unwarranted intrusions into their personal security through an unwanted ECT.[6] We conclude that § 51.61(1)(k) violates the equal protection clause because it is not narrowly tailored to promote this interest. A statute is not narrowly tailored if it is overbroad or underinclusive in substantial respects. *See Church of Lukumi Babalu Aye v. Hialeah*, 113 S. Ct. 2217, 2233-34 (1993). Section 51.61(1)(k) is overbroad in its attempt to protect patients from unwanted ECT treatments because it prevents all

---

[5] We note that the mentally ill or in this case, "those unable to give informed consent due to their mental illness" are probably not a suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

[6] Appellants argue the state interest in preventing unwanted ECT is not compelling because of the medical advances made in the administration of ECT. *See* Richard D. Weiner, *Convulsive Therapies*, COMPREHENSIVE TEXTBOOK OF PSYCHIATRY/IV, ch. 30.5 at 1558 (Harold I. Kaplan & Benjamin J. Sadock ed. 1985). We do not address these arguments because we conclude that § 51.61(1)(k), STATS., is not narrowly tailored.

patients unable to give "express and informed consent" from receiving ECT under any circumstances. We conclude that the denial of this lifesaving medical procedure to Ruth because she is in a class of citizens unable to express consent violates her right to equal protection of the laws.

We hold, alternatively, that § 51.61(1)(k), STATS., denies Ruth lifesaving treatment in violation of her constitutional right to life. The Fourteenth Amendment to the United States Constitution and Article I, § 1 of the Wisconsin Constitution extend to all the right to life and liberty, which may not be deprived without due process of law.[7] The stipulated facts indicate that § 51.61(1)(k) denies Ruth the right to life because it prevents her from obtaining the only remaining medical option likely to reverse her condition.

Section 51.61(1)(k), STATS., also denies Ruth her constitutional right to liberty in choice of medical care. The Wisconsin Supreme Court has held that the right to liberty "includes an individual's choice of whether or not to accept medical treatment." *In re L.W.*, 167 Wis. 2d at 69, 482 N.W.2d at 65. The constitutional right to choose or refuse medical treatment extends to incompetent as well as competent individuals. *Id.* at 74, 482 N.W.2d at 67.

As stipulated, Ruth cannot give informed consent. Consequently, Ruth cannot obtain ECT under any circumstances because she cannot meet the requirement of § 51.61(1)(k), STATS., to give "express and informed consent" to obtain an ECT. We conclude, therefore, that

---

[7] *See supra* note 4.

§ 51.61(1)(k), as applied to the stipulated facts, denies Ruth her right to choose medical procedures.

Pursuant to our earlier order, the circuit court should conduct a hearing or, in the court's discretion, a receipt of stipulation, that resolves the following factual questions:

1. Whether Ruth E.J.'s mental status presents a life threatening condition;

2. whether the proposed therapy is a life saving remedy;

3. whether all other reasonable alternatives have been exhausted;

4. whether two examining physicians recommend the treatment;

5. whether, in the trial court's independent judgment, the electroconvulsive treatment is in Ruth E.J.'s best interests.

Should the court resolve the preceding factual questions affirmatively, it may order treatment.

*By the Court.*—Order reversed and cause remanded for further proceedings.